1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

CORY SPURLOCK,

Defendant.

Case No. 3:23-CR-00022-MMD-CLB

**ORDER DENYING MOTION FOR RELEASE OR, IN THE ALTERNATIVE, MOTION TO REOPEN DETENTION, AND GRANTING MOTION TO SEAL**

[ECF Nos. 133, 141]

Before the Court is Defendant Cory Spurlock's ("Spurlock") Motion for Release for Violation of Due Process Rights or, in the Alternative, Motion to Reopen Detention Hearing. (ECF No. 133.) The Government opposed the motion, (ECF Nos. 139, 140, 141)[1], and Spurlock replied, (ECF No. 142). The Court has thoroughly reviewed the filings, and for the reasons stated below, the Court denies Spurlock's motion. (ECF No. 133.)

I.      **BACKGROUND AND PROCEDURAL HISTORY**

On May 11, 2023, a federal grand jury indicted Spurlock in a two-count indictment, for (1) murder-for-hire conspiracy pursuant to 18 U.S.C. § 1958(a), and (2) conspiracy to distribute marijuana pursuant to 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). (ECF No. 1, 3.) Count 1 was death eligible. On May 15, 2023, Spurlock was arrested on his federal arrest warrant. (ECF No. 5.) The next day, Spurlock appeared for an initial appearance and detention hearing before the undersigned. (ECF No. 6.) The Government moved for detention and Spurlock submitted on the matter and did not make any argument in favor of release. (*Id.*) Spurlock did not interview with Pretrial Services prior to the detention hearing. The Court ordered Spurlock detained pending trial. (ECF No. 12.) Trial was set

---

[1]      ECF No. 139 is the Government's response. ECF No. 140 is a sealed exhibit filed in support of the response. ECF No. 141 is a motion to seal the exhibit. The *ex parte* motion to seal is granted. However, the Court did not consider the exhibit in ruling on the motion for release.

1    for July 25, 2023. (ECF No. 6.) Finally, at the hearing, the Federal Public Defender's

2    Office was appointed as Spurlock's counsel. (ECF No. 8, 15.)

3           On May 30, 2023, the Government filed a motion for appointment of a conflicts

4    attorney based on a potential conflict that could disqualify the Federal Public Defender's

5    Office from representing Spurlock. (ECF No. 17.) On July 5, 2023, after a status

6    conference, District Judge Anne R. Traum recused herself from this case, and the case

7    was reassigned to Chief Judge Miranda M. Du. (ECF No. 38.)

8           On July 19, 2023, the District Court held a status conference to discuss the trial

9    date. (ECF No. 47.) Despite Spurlock's objection to continue trial, the Court ultimately

10   overruled his objection and continued trial to February 6, 2024. (*Id.*) The Court found that

11   the continuance was excludable under the Speedy Trial Act. (*Id.*)

12          On August 7, 2023, the District Court held an evidentiary hearing regarding the

13   motion for appointment of a conflicts attorney, and ultimately denied the motion. (ECF No.

14   70.) The same day, Spurlock filed a motion to appoint learned counsel based on his death

15   eligible offenses. (ECF No. 68.) On August 8, 2023, the District Court granted Spurlock's

16   motion to appoint learned counsel. (ECF No. 69.)

17          On November 30, 2023, the Government filed a superseding indictment alleging

18   seven counts: (1) murder-for-hire conspiracy pursuant to 18 U.S.C. §1958(a); (2) stalking

19   resulting in the death pursuant to 18 U.S.C. §§ 2261A(1)(A)(i) and 2261(b)(1); (3) stalking

20   resulting in the death pursuant to 18 U.S.C. §§ 2261A(1)(A)(i) and 2261(b)(1); (4)

21   interference with commerce by robbery pursuant to 18 U.S.C. § 1951; (5) causing death

22   through use of a firearm during and in relation to a crime of violence pursuant to 18 U.S.C.

23   §§ 924(c), (j)(1); (6) interference with commerce by robbery pursuant to 18 U.S.C. § 1951;

24   and (7) conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1),

25   841(b)(1)(A)(vii). (ECF No. 84.) Counts 1 and 5 were death eligible. Spurlock appeared

26   for his arraignment and plea to the superseding indictment on December 11, 2023. (ECF

27   No. 89.)

28   ///

On January 9, 2024, at the request of counsel, the District Court held a status conference. (*See* ECF Nos. 92, 95, 97.) At the status conference, the Government advised that it may supersede the indictment sometime in March 2024. (ECF No. 97.) The Court and counsel also discussed resetting the trial and setting a timeline for the presentation of the death penalty protocol to the United States Attorney and for a decision. (*Id.*) Ultimately, the Court set the deadline for Defense counsel to present mitigation and death penalty protocol to the U.S. Attorney by the first week of April, and the Government had until August 15, 2024, to decide whether to seek the death penalty in this case. (*Id.*) Defense counsel advised the Court that Spurlock opposed a continuance of the trial, but ultimately the trial was continued to November 5, 2024, over Spurlock's objection. (*Id.*) Finally, the Court made findings pursuant to the Speedy Trial Act and found the continuance was excludable under the Speedy Trial Act and the time was excluded. (*Id.*)

On July 11, 2024, the Government filed a second superseding indictment alleging seven counts: (1) conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1); 841(b)(1)(A)(vii); (2) murder while engaged in narcotics trafficking pursuant to 21 U.S.C. § 848(e)(1)(A); (3) murder-for-hire conspiracy pursuant to 18 U.S.C. § 1958(a); (4) stalking resulting in the death pursuant to 18 U.S.C. §§ 2261A(1)(A)(i) and 2261(b)(1); (5) stalking resulting in the death pursuant to 18 U.S.C. §§ 2261A(1)(A)(i) and 2261(b)(1); (6) interference with commerce by robbery pursuant to 18 U.S.C. § 1951; (7) causing death through use of a firearm during and in relation to a crime of violence pursuant to 18 U.S.C. §§ 924(c), 924(j)(1); and aiding and abetting with respect to Counts Two, Four, and Five, pursuant to 18 U.S.C. § 2. (ECF No. 127.) Counts 1 and 5 were death eligible. On July 15, 2024, Spurlock filed a motion to sever counts, requesting Counts One and Two of the second superseding indictment be severed from Counts Three through Seven. (ECF No. 129.)

Spurlock appeared for his arraignment and plea on the second superseding indictment on July 18, 2024. (ECF No. 135.) On July 31, 2024, the Government filed a notice of intent not to seek the death penalty in this case. (ECF No. 138.)

On July 18, 2024, Spurlock filed the instant motion for release due to violation of due process rights or, in the alternative, motion to reopen detention. (ECF No. 133.)

## II.     MOTION FOR RELEASE

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish,* 441 U.S. 520, 536-37 (1979) (internal quotations omitted). The government may detain someone on a federal offense to ensure his presence at trial and may subject him to the restrictions and conditions of detention so long as those conditions do not constitute punishment or otherwise amount to a constitutional violation. *Id.*

The Bail Reform Act of 1984 mandates every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a). The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can reasonably be assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide for such assurances, the individual must be released, as detention is "the carefully crafted limited exception." *Id.; see also United States v. Salerno,* 481 U.S. 739, 755 (1989). If the judge finds the defendant poses a danger to public safety or a flight risk, the defendant may be ordered detained. 18 U.S.C. § 3142(f).

"[A]t some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*, 481 U.S. at 747 n.4). The point at which detention constitutes a due process violation requires a case-by-case analysis. *United States v. Gelfuso*, 838 F.2d 358, 359–60 (9th Cir. 1988) (adopting case-by-case analysis and declining to express a "view as to the point at which detention in a particular case might become excessively prolonged and violate due process"). A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory

purpose that can rationally be assigned to the detention, or the detention appears excessive in relation to its regulatory purpose. *Salerno*, 481 U.S. at 747 (citation omitted). In evaluating whether a due process violation has occurred, the following factors are weighed: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act. *Torres*, 995 F.3d at 708.

### A.    Length of Spurlock's Pretrial Detention

Spurlock has been detained in federal custody since May 16, 2023, and his trial is currently set for November 5, 2024.[2] Spurlock has been detained for nearly 15 months and will be detained for nearly 18 months assuming his trial goes forward in November. On its face, this length of detention could weigh in favor of recognizing a due process violation. *See United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019) (explaining that "delays approaching one year are presumptively prejudicial" for Sixth Amendment purposes) (citation omitted). However, this does not account for the complexity of the allegation in this case—specifically a murder-for-hire and drug trafficking conspiracy, with death eligible offenses. (*See* ECF No. 129.) "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Myers*, 930 F.3d at 1119. Considering the complex nature of this case, the Court finds that Spurlock's length of detention only weighs slightly in Spurlock's favor of recognizing a due process violation.

### B.    Prosecution's Contribution to Delay

Next, the Court must consider "the extent to which the prosecution bears responsibility for the delay that has ensued." *Gelfuso*, 838 F.2d at 359. Spurlock argues the Government has delayed his pretrial detention by: (1) causing Spurlock to remain in

---

[2]    To the extent Spurlock believes that his time in state custody should be considered, the Court disagrees. Spurlock cites to no cases where courts have considered any detention prior to when federal prosecution began. In fact, the Ninth Circuit has specified that, "delay is measured from the time of the indictment to the time of trial." *United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019).

1   state custody while the Government "cooperated his co-conspirator"; (2) filing a motion to

2   disqualify the FPD; (3) not providing discovery until a protective order was negotiated; (4)

3   not submitting an expedited "no seek"; and (5) filing superseding indictments. (ECF No.

4   133 at 15-17.)

5        While there has been litigation in this case that has caused Spurlock to spend

6   additional time in custody, the amount of litigation appears reasonable given the nature

7   of the offenses charged and complexity of the case. Additionally, the trial date has only

8   been extended twice and the District Judge found the time excludable under the Speedy

9   Trial Act in both instances. Further, the record reflects that Spurlock's counsel requested

10   a trial date in December of 2024. However, the District Court, mindful of the time Spurlock

11   spent in custody, set the current trial date for November 2024. To now argue that the

12   Government contributed to the delay, when his own counsel requested an even later trial

13   date, is illogical. This factor weighs against finding a due process violation.

14        **C.     Evidence Supporting Detention under Bail Reform Act**

15        Finally, the Court will look to the strength of the evidence supporting Spurlock's

16   detention under the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g).

17        Here, the undersigned ordered Spurlock detained pending trial based on a finding

18   that the Government had proved by a preponderance of the evidence that no condition

19   or combination of conditions of release will reasonably assure Spurlock's appearance as

20   required and by clear and convincing evidence that no condition or combination of

21   conditions will reasonably assure the safety of any other person and the community. (ECF

22   No. 12.)

23        After considering the factors set forth in 18 U.S.C. § 3142(g) and the information

24   presented at the detention hearing, the undersigned concluded Spurlock posed a risk of

25   nonappearance and a danger to the community, specifically noting Spurlock's

26   background information was unknown or unverified, as he did not interview with Pretrial

27   Services. (*Id.* at 3.) The grand jury found probable cause to believe Spurlock engaged in

28   the alleged criminal conduct. Spurlock provides no new information to overcome the initial

1  detention order. Further, Spurlock submitted on the matter of detention at the original

2  detention hearing. (*See* ECF No. 6.)  Therefore, Spurlock has not presented any evidence

3  to alleviate the Court's concerns that he remains a flight risk and a danger to the

4  community and there are no conditions that could be fashioned to reasonably assure his

5  appearance at trial. Thus, this factor weighs against finding a due process violation.

6        **D.      Balance of Factors**

7        Balancing all the factors, and based on the complexity of the case, the Court finds

8  Spurlock's detention rationally connected to a regulatory purpose—preventing danger to

9  the community and ensuring Spurlock's appearance. *See Torres*, 995 F.3d 709-10 (citing

10  *Salerno*, 481 U.S. at 747 (noting that "preventing danger to the community" is a regulatory

11  interest supporting pretrial detention under the Bail Reform Act); *United States v. Millan*,

12  4 F.3d 1038, 1043–44 (2d Cir. 1993) (including assurance that a defendant will not flee

13  before trial as a regulatory interest supporting pretrial detention)). Accordingly, the Court

14  finds that Spurlock's detention does not violate due process and denies the motion.

15  **III.    MOTION TO REOPEN DETENTION**

16        The Court now turns to Defendant's request to reopen the detention hearing.

17  Section 3142(f)(2) permits a judicial officer to reopen a detention hearing at any time

18  before trial if the judicial officer finds that information exists that was not known to the

19  movant at the time of the detention hearing and that has a material bearing on the issue

20  of whether there are conditions of release that will reasonably assure the appearance of

21  such person as required and the safety of any other person and the community. Courts

22  interpret this provision strictly. *United States v. Bararia,* No. 2:12-cr-00236-MMD-GWF,

23  2013 WL 1907782, at *4 (D. Nev. Mar. 12, 2013); *e.g., United States v. Ward,* 63

24  F.Supp.2d 1203, 1206-07 (C.D. Cal. 1999); *United States v. Dillon,* 938 F.2d 1412, 1415

25  (1st Cir. 1991). The rule requires the movant, whether prosecutor or defendant, establish:

26  (1) that information now exists that was not known to the movant at the initial detention

27  hearing, and (2) the new information is material to release conditions regarding flight or

28  dangerousness. *Dillon*, 938 F.2d 1415; *see also United States v. Bowens,* 2007 WL

1    2220501 (D. Ariz. Jul. 31, 2007) (citing *United States v. Hare,* 873 F.2d 796 (5th Cir.

2    1989). Generally, once a detention hearing is reopened, it is reopened to allow the court

3    to receive any information, within reason, not submitted at the initial hearing, allowing the

4    new information to be considered in context. *Id.* If the information was available at the

5    time of the original hearing, the detention hearing need not be reopened. *United States*

6    *v. Turino,* 2014 WL 5261292, at *1 (D. Nev. Oct. 15, 2014) (citing *Ward,* 63 F.Supp.2d at

7    1206).

8            In the alternative to his request for relief based on an alleged due process violation,

9    Spurlock asks that the Court reopen detention and release him. (ECF No. 133 at 19-24.)

10   Specifically, Spurlock argues several changes in circumstances warrant reopening of his

11   detention hearing: (1) Spurlock's interview with Pretrial Services; (2) the Government's

12   repeated delays; (3) Nevada Southern Detention Center's failure to keep Spurlock safe

13   and treat his injuries; (4) Spurlock's newly discovered history and characteristics; and (5)

14   an anticipated decision by the Attorney General not to seek the death penalty in

15   Spurlock's case. (*Id.*)

16           Spurlock has not provided any information that was not known at the time of the

17   initial hearing *and* material to the issue of whether conditions of release will reasonably

18   assure his appearance or the safety of any other person or the community. Information

19   provided by Spurlock in his recent interview with Pretrial Services and Spurlock's own

20   military service were clearly known to Spurlock at the time of his initial detention hearing—

21   despite it potentially being unknown to the Government or the Court.

22           As discussed above, while there have been delays in this case, there is no

23   evidence that any such delays are relevant to whether conditions of release will

24   reasonably assure Spurlock's appearance of the safety of any other person or the

25   community. Next, Spurlock's argument that Nevada Southern Detention Center has failed

26   to keep him safe and treat his injuries, is not material to whether conditions of release can

27   be fashioned.

28

1      Finally, while Spurlock now knows he will not be facing the death penalty, he

2  continues to face a mandatory life sentence if convicted on the murder-for-hire conspiracy

3  counts. Thus, it is unclear how this would change whether there are conditions of release

4  that will reasonably assure the appearance of Spurlock as required and the safety of any

5  other person and the community.

6      In sum, the Court finds that there is no new information material to whether

7  conditions of release can be fashioned. Accordingly, the motion to reopen detention under

8  18 U.S.C. § 3142(f)(2) is denied.[3]

9  **IV.    CONCLUSION**

10      Consistent with the above, **IT IS ORDERED** that Spurlock's motion for release or,

11  in the alternative, to reopen detention, (ECF No. 133), is **DENIED**.

12      **IT IS FURTHER ORDERED** that the Government's motion to seal, (ECF No. 141),

13  is **GRANTED**.

14      **IT IS SO ORDERED.**

15      **DATED**: August 16, 2024.

16

17  _____

18      **UNITED STATES MAGISTRATE JUDGE**

19

20

21

22

23

24  _____

25  [3]    Even assuming the Court were to grant the motion to reopen, as discussed above, and looking to the nature and circumstances of the offense, history and characteristics of

26  Spurlock, nature and seriousness of the danger to any person or the community posed by Spurlock's release, and the weight of the evidence—Spurlock continues to pose a risk

27  of flight and risk of danger, and the Court finds that no conditions can reasonably assure his appearance or the safety of the community.

28