UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br>    v.<br>CORY SPURLOCK,<br><br>               Defendant. | Case No. 3:23-cr-00022-MMD-CLB-1<br><br>ORDER |

**I.    SUMMARY**

Defendant Cory Spurlock was indicted for murder-for-hire conspiracy and conspiracy to distribute marijuana. (ECF No. 1.) At his initial appearance, the presiding Magistrate Judge ordered Defendant detained pending trial. (ECF No. 6.) Defendant recently moved to reopen detention and for release based on a claim of violation of his due process rights (ECF No. 133); the Magistrate Judge denied his motion (ECF No. 149). Defendant filed an objection to that order. (ECF No. 155 ("Objection").[1]) The Court held a hearing on the Objection. (ECF No. 171.) For the reasons discussed below, the Court overrules Defendant's Objection and affirms the Magistrate Judge's decision.

**II.    RELEVANT BACKGROUND**

On May 11, 2023, the grand jury returned the original indictment charging Defendant with murder-for-hire conspiracy relating to the killing of W.L. (count 1) and conspiracy to distribute marijuana (count 2). (ECF No. 1.) At the initial appearance held on the same day, the government moved for detention, which the Magistrate Judge

---

[1]The government responded (ECF No. 155) and Defendant replied (ECF No. 168).

granted.[2] (ECF No. 6.) Thus, Defendant has been in pretrial detention as part of this case since May 11, 2023.

Since then, the case has expanded in scope to include charges related to three deaths. (ECF Nos. 84, 127, 160.) The third superseding indictment, returned on September 12, 2023, charges Defendant with eight counts: (1) conspiracy to possess with intent to distribute and to distribute marijuana between November 2019 and June 2020; (2) murder while engaged in narcotics trafficking relating to the killing of J.S.; (3) murder for hire relating to the killing of W.L. between October 2020 and March 2021; (4) tampering with a witness by killing of W.L. on or about November 2020; (5) stalking resulting in death relating to W.L. between October and November 2020; (6) stalking resulting in death relating to the killing of Y.L between October and November 2020; (7) interference with commerce by robbery in November 2020; and (8) causing death through use of a firearm during and in relation to a crime of violence in November 2020. (ECF No. 160.)

Because Defendant faced death eligible charges, the case went through the Department of Justice's Capital Case Review Process. (ECF No. 93 at 6.) The government did not submit an expedited no-seek decision for Defendant's death eligible charges.[3] (Id.) At a January 9, 2024 hearing, after conferring with counsel as to the schedule for completion of the capital case review, the Court set a deadline for the government to make a decision on whether to seek the death penalty by August 16, 2024, and continued trial to November 4, 2024, assuming a no-seek decision. (ECF No. 132 at 5-21.)

Trial was initially set for July 25, 2023. (ECF No. 6.) The Court has continued trial three times, first to February 6, 2024 (ECF No. 47), then to November 5, 2024 (ECF No. 95), and finally to the current trial date of April 22, 2025 (ECF No. 150). Defendant

---

[2]Defendant submitted to the matter of detention. (ECF Nos. 6, 134 at 8.)

[3]The government asserts that Defendant did not qualify for the expedited process. (ECF No. 139 at 14.)

objected to every continuance, mainly because of his pretrial detention, while his attorneys acknowledged that they need more time to prepare and to effectively represent Defendant. (ECF Nos. 47, 97, 150.)

As relevant to Defendant's argument regarding the length of his pretrial detention, Defendant, along with two individuals, Bradley Kohorst and Orit Oged, were charged with the murder of W.L. and Y.L. in a criminal complaint filed in the Mono County Superior Court in April 2021. (ECF No. 93 at 3.) In April 2021, Defendant was taken into custody and remained in state custody until his transfer to federal custody in connection with this case.[4] (*Id.* at 4.)

In the summer of 2022, the U.S. Attorney's Office for this district started to work with Mono County Sherriff's Office, Mono County District Attorney's Office and other federal law enforcement agencies on "an investigation into a multi-state marijuana drug trafficking organization involving several individuals and three related homicides" (the same three deaths ultimately charged in this case). (ECF No. 59 at 2.) One individual, Bradley Kohorst, was charged in this district first via a criminal complaint on August 11, 2022 (case no. 3:22-mj-00110-CSD) and later via an indictment on January 19, 2023 (case no. 3:23-cr-00002-ART-CLB). (ECF No. 59 at 5.)

Before the most recent trial continuance, Defendant moved for release, or in the alternative, to reopen detention. (ECF No. 133.) The Magistrate Judge denied the motion. (ECF No. 149.) This Objection follows.

**III.   DISCUSSION**

The Court reviews the Magistrate Judge's detention order under 18 U.S.C. § 3142(e) de novo. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir.1990). This standard requires the district court to review the evidence presented to the magistrate judge, and any additional evidence presented, to "make its own independent

---

[4]Defendant represented that he was arrested in connection with the Mono County case in Montana on March 25, 2021. (ECF No. 142 at 3 n. 3.)

determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193.

Defendant challenges the Magistrate Judge's order on two grounds. First, he asserts he should be released because the long duration of the pretrial detention, including his time in state custody, violates his due process rights. Second, he asserts that changes in circumstances warrant reopening detention under the Bail Reform Act. The Court will address each argument in turn.

**A.     Due Process**

"[P]retrial detention can 'become excessively prolonged and therefore punitive,' resulting in a due process violation." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). In determining whether pretrial detention violates due process, the Court evaluates three factors; "(1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act." *Torres*, 995 F.3d at 708.

As a threshold matter, Defendant argues that the Court should consider his time in state custody as part of the length of his pretrial detention in this case. (ECF No. 133 at 14.) At the hearing, defense counsel insisted that the Mono County prosecution was a shell process that the government used to advance federal prosecution, making Defendant's time in state custody relevant to the first *Torres* factor. The government responded that the Mono County state case was comparatively simple: That case addressed a homicide out of Bridgeport, California, while this case involves a wide scale distribution of marijuana and charges relating to killings in different jurisdictions. The government further explained the background of its investigation, starting in May 2022, and described how the investigation paralleled the state's investigation in the Mono County case. The Court agrees with the government that there is no evidence that the government improperly delayed in conducting its own investigation before bringing the indictment in this case while utilizing the state prosecution as a shell. Indeed, the Court

would expect the government to conduct its own investigation before seeking the indictment in this case. And as the government explained, counts one and two in this case, which charge Defendant with narcotics trafficking and a killing in connection with the trafficking, involve a different victim and events which occurred before the offenses charged in counts three through eight (which relate to the killings in Bridgeport). Accordingly, the Court finds no basis to consider Defendant's pretrial detention in the Mono County case in evaluating the length of his federal pretrial detention.

In this case, Defendant has been detained for about 17 months since his arrest on May 15, 2023 (ECF No. 5), and he will have been detained for almost 24 months by the time of the trial scheduled to begin on April 22, 2025. While Defendant submitted to detention at his initial appearance in this case, he has objected to every continuance of trial primarily because of the length of his pretrial detention, despite his counsel's representations about the need for continuances. The Court thus agrees with Defendant that the first *Torres* factor—the length of his time in pretrial detention in this case—weighs in favor of a finding of a due process violation.

As to the second *Torres* factor—the prosecution's contribution to the delay— Defendant argues that the government has contributed to the delay on numerous occasions, including by filing the motion to disqualify counsel, failing to produce discovery until a protective order was entered, refusing to submit an expedited no-seek decision under the Capital Case Review Process, and continually shifting the scope of the case through multiple superseding indictments.[5]  (ECF No. 133 at 17.) While the government explained its reasoning for these decisions[6], Defendant argues in response that a bad

---

[5]Defendant also argues that the government's delay in seeking the indictment in this case while Defendant remained in state custody should be considered. As explained above, the Court cannot find that the government was responsible for the delay in seeking indictment given the government's explanation of the need to conduct its own investigation, the scope of which exceeded the case filed in Mono County.

[6]The government explained that it raised the potential conflict due to Federal Public Defender ("FPD") staff's contact with Bradley Kohorst, which necessitated an evidentiary hearing and also delayed discussion of the protective order and discovery until resolution of that potential conflict. (ECF No. 139 at 12-16.) The government also explained the

faith showing is not required because it is sufficient that the government made decisions contributing to the delay (ECF No. 142 at 4.)

In considering the second *Torres* factor, the Court "must . . . consider 'the extent to which the prosecution bears responsibility for the delay that has ensued.'" *Torres*, 995 F.3d at 708 (quoting *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) (holding that the record supported the district court's finding that the government was not responsible for a delay because it did not deny access to 600 hours of tape, which necessitated continuance of trial, when it restricted access during a short period of time while the tapes were being duplicated)). The *Torres* decision suggests that the government is "responsible" for a delay when it also bears some degree of culpability—not merely, as Defendant insists, when it makes any kind of decision that results in delay.[7]

Here, the only delay for which the government bears clear responsibility is the delay in filing a stipulated protective order for a period of about a month.[8] The government's separate decision to file a motion to appoint conflict counsel led to a delay of about two months.[9] But the Court cannot find that the government was responsible for that delay, given that information about FPD contact with Kohorst prompted the government to raise the issue.

---

extent of the investigation that led to the multiple superseding indictments. (*Id.*) The Court found no conflict in the FPD's representation of Defendant as a result of that contact with Kohorst, because no confidential information was shared during the brief meeting that lasted about 35 minutes. (ECF No. 71.) Obviously, had that meeting not occurred, there would have been no basis for the government to file the motion for appointment of conflict counsel.

[7]Defendant does not cite to any authority to support his argument that the Court need not find the government acted in bad faith and that the Court may hold the government responsible for making its strategic decisions. The Court need not decide whether a bad-faith finding is required.

[8]The Court resolved the motion to disqualify on August 7, 2023. (ECF No. 70.) The government represents that a draft protective order was forwarded to defense counsel on September 7, 2023, and defense counsel responded on September 28, 2023, with the need to make additional edits. (ECF No. 139 at 4.) The parties ultimately filed a joint motion to approve the stipulated protective order on October 27, 2023. (ECF Nos. 80, 139.) Thus, the period of delay attributable to the government is roughly one month.

[9]The government filed a motion for appointment of conflict counsel on May 30, 2023 (ECF No. 17); the Court denied that motion on August 7, 2023 (ECF No. 70).

The two remaining decisions—refusal to submit an expedited no-seek and pursuing multiple superseding indictments—did not result in direct delay. Defendant argues that the former decision resulted in defense counsel spending significant time on mitigation evidence, affecting the work needed for the underlying defense. But the Court cannot hold the government responsible when the case does not qualify for expedited review. As for the multiple superseding indictments, the Court does not find that this case has involved an unusual number of superseding indictments. More important, as the government contends, the charges here involve an expansive alleged conspiracy to distribute marijuana and the killings of three victims in two states. The parties do not dispute that the case is complex and involves extensive electronic discovery and data not easily extracted.[10]

In sum, the Court finds that other than a delay for several months—comparatively insignificant relative to the total length of pretrial detention—the overall delay here stems primarily from the nature of serious charges involving three killings in two states and the scope of the investigation involving multiple agencies across multiple states. This delay cannot be attributed to the government. The Court finds that the second *Torres* factor weighs against a finding of a due process violation.

The third *Torres* factor—the evidence supporting detention under the Bail Reform Act—similarly weighs against a finding of a due process violation. The Court agrees with the Magistrate Judge's finding that the evidence supports detention under the 18 U.S.C.

---

[10]In a status report, defense counsel acknowledges that "[t]his is a complex case with voluminous and highly technical discovery requiring forensic analysis." (ECF No. 93 at 11.) The government similarly acknowledged the complexity of the case and has explained the timeline for capital review and the modifications to the charges. (ECF No. 132 at 6-8.) At the recent status conference held on August 19, 2024, defense counsel represented they were not prepared to keep the November 5, 2024 trial schedule, citing the voluminous discovery produced and yet to be produced. (ECF No. 150.) The government further emphasized the unprecedented amount of discovery, including the number of electronic devices involved, and the fact that relevant data are not easily extracted because they are stored on various cloud services. (*Id.*)

§ 3142(g)[11] factors. (ECF No. 149 at 6-7.) At the time of the detention hearing, the Magistrate Judge explained that Defendant's "background information was unknown or unverified, as he did not interview with Pretrial Services," and the grand jury had found probable cause to indict Defendant. Because Defendant submitted on the matter of detention, the Magistrate Judge properly found that Defendant remains a flight risk and poses a danger to the community and there are no conditions that could be fashioned to reasonably assure his appearance. (ECF No. 149 at 7.)

Even if the Court considers the information Defendant shared in his recent interview with pretrial services—including his military background, his lack of criminal history and substance abuse history and the support of his family (ECF No. 133 at 18)—the Court agrees with the government that this added information is not enough to shift the analysis under section 3142(g) in favor of release, considering the remaining three factors. As the government points out, the charges have expanded from the initial indictment consisting of two counts involving one death to include six additional counts and allegations of two additional deaths. While the Attorney General has elected not to seek the death penalty, the potential penalties include one mandatory life sentence and five potential life sentences. (ECF No. 139 at 17.) "Consideration of the nature of the offenses charged involves consideration of the penalties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). The length of Defendant's potential sentence increases the risk that he will flee, because the possibility of a lengthy sentence, even without the death penalty, incentivizes fleeing where a shorter potential sentence might not. *See id.* (finding that the district court reasonably determined that defendants' potential lengthy sentence provided them with greater incentive to flee). And the nature of the offenses

---

[11] 18 U.S.C. § 3142(g) requires the presiding judge to consider the following factors in determining whether conditions of release will reasonably assure the appearance of the person and the safety of the community: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released.

charged, involving the killing of three victims and narcotics trafficking, supports a finding of dangerousness to the community. The Court thus agrees with the government that Defendant presents a risk of nonappearance and poses a danger to the community and that no conditions of release could be fashioned to reasonably assure his appearance or protect the safety of the community.

Defendant's pretrial detention of 17 months, expanding to 24 months by the time of trial, "is significant under any metric and is deeply troubling." *See Torres,* 995 F.3d at 709 (observing that Torres' pretrial detention for a period of 21 months "is approaching the limits of what due process can tolerate"). But balancing the three *Torres* factors*,* the Court finds that the government's lack of contribution to the delay and the strength of the evidence supporting pretrial detention weigh against the finding that a due process violation has occurred at this time.

**B.     Reopening Detention**

Defendant argues in the alternative that the Court should reopen detention under 18 U.S.C. § 3142(f), citing five changes in circumstances. (1) Defendant's interview with pretrial services; (2) the government's alleged delays; (3) an incident when Defendant was attacked and sustained injury while in pretrial detention; (4) Defendant's "newly discovered history and characteristics"; and (5) the Attorney General's decision to remove the death penalty.[12] (ECF No. 133 at 18.)

Section 3142(g) provides that a detention hearing can be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure" the appearance of the person or the safety of the community. Accordingly, the moving party must show that (1) information exists that was not known to the movant; and (2) the new information is material to the release conditions

---

[12]Defendant identified the fifth changed circumstance as the anticipated no-seek because the Attorney General had not made the sanction decision at the time the motion to reopen detention was filed. The Objection to the Magistrate Judge's order relied on the decision not to seek the death penalty. (ECF No. 155 at 6.)

as to the risk of flight or safety to the community. Applying this standard, the Magistrate Judge found that Defendant's cited reasons do not meet these criteria. (ECF No. 149.) The Court agrees.

The Magistrate Judge correctly found that facts shared in Defendant's interview with pretrial services (first change) and facts about his background (fourth change) are not new information because they relate to Defendant's own personal information, rather than information previously unknown to the movant as required under the first Section 3142(g) factor. The Magistrate Judge also correctly found that Defendant's proffered second and third changes do not meet the second Section 3142(g) factor because they are not material to whether the Court can fashion conditions of release which reasonably assure Defendant's appearance and protect the safety of the community. As for the fifth change—removal of the death penalty—the Magistrate Judge found that it is unclear how the government's decision to remove death as a possible penalty would affect the release conditions. As discussed above, Defendant is still facing a significant potential sentence, including a mandatory life sentence. In light of the significant penalties, the Court cannot conclude that the Attorney General's decision is material to the release conditions.

In sum, the Court agrees with the Magistrate Judge and affirms her decision to deny the request to reopen detention.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the objection before the Court.

///

///

///

///

///

It is therefore ordered that Defendant's Objection to the Magistrate Judge's order (ECF No. 155) is overruled.

DATED THIS 8th Day of October 2024.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE