# Exhibit C

# 20-SW-71
# Search Warrant & Affidavit

EXHIBIT

SUPERIOR COURT COUNTY OF MONO OF CALIFORNIA

FILED

NOV 19 2020

SUPERIOR COURT OF CALIFORNIA
COUNTY OF MONO
BY

# SUPERIOR COURT OF CALIFORNIA
## County of MONO

## SEARCH WARRANT
**Electronic Communications and/or Data**
**In Possession of Provider**
Penal Code §§ 1524.3; 1546 et seq.

**The People of the State of California**
**To Any Peace Officer in the Above County** Warrant No. 20-SW-71

**Order**: An affidavit by Deputy Jason Pelichowski, which was sworn to and subscribed before me on this date, has established probable cause for the issuance of this search warrant which you are ordered to execute in the manner below.

**Name and agency of Affiant** (Hereinafter "Affiant"): Deputy Jason Pelichowski, Mono County Sheriff's Office

**Name of service Provider** (Hereinafter "Provider"): Cellco Partnership dba: Verizon Wireless

**Mailing address of service Provider**

Verizon Security Assistance Team (VSAT)
Attn: Custodian of Records
180 Washington Valley Road
Bedminster, NJ 07921
**Fax: (888) 667-0026**

**Type of communications and/or data to be seized:**

All records associated with mobile number **7606878043** for the dates of **06/01/2020 PST** to **11/19/2020 PST**

*If the number is not associated with a subscriber on your network you are ordered to process this request as a "Call and Text to Destination" search that is to include all calls, text, text message content, voicemails, and cell-site and sector information related to each call or text.

This request includes:

1. **Specialized Location Records:** All call, voice, text (SMS & MMS), and data connection location information and transactions (registration of network events), related to all specialized carrier records that may be referred to as NELOS (Network Event Location System), RTT (Round Trip Time/Return Trip Time/Real Time Tool), PCMD (Per Call Measurement Data), TDOA (Time Difference of Arrival) or Timing Advance Information, Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network for the above referenced number.

USAO 015884

2. **Call/Text/Data Detail Records:** All records associated with the identified mobile number **7606878043**, also to include all numbers that communicate with this listed number relating to all delivered and undelivered inbound and outbound calls, text messages, and text message content to any of the above listed numbers, all voice mail, and all data connections from **06/01/2020 PST** through **11/19/2020 PST,** and to include Cell-site and sector, date, time, direction, duration, number called or text to and/or received from, and bytes up/down, information related to each call, text or data connection, all text message content, and voicemails, as well as Call to Destination/Dialed Digits search for all numbers listed above. Please preserve all cell-site and sector information related to each call, text or data connections.

3. **Electronically Stored Records:** All records associated with the identified mobile number **7606878043,** to include all stored communication or files, including voice mail, text messages, including numbers text to and received from and all related content, e-mail, digital images (e.g. pictures), contact lists, video calling, web activity (name of web site or application visited or accessed), domain accessed, data connections (to include Internet Service Providers (ISPs), Internet protocol (IP) addresses, (IP) Session data, (IP) Destination Data, bookmarks, data sessions, name of web sites and/or applications accessed), date and time when all web sites, applications, and/or third party applications were accessed and the duration of each web site, application, and/or third party application was accessed, and any other files including all cell site and sector information associated with each connection and/or record associated with the cell number identified as: **7606878043**

4. **Carrier Key** related to call detail, text messages, data connections, IP logs, IP Sessions, web site and/or application connections, and cell site information.

5. **Cloud Storage**: Content stored in remote storage or 'cloud accounts' associated with the target device including, but not limited to, contacts, call logs, SMS and MMS messages with associated content including audio, video, and image files, digital images and videos, and files or documents.

6. **Cell Site List(s):** List of all cell-sites as of **November 2020** for all state(s) in which the above records used cell locations. Cell site lists to include switch, cell-site number, name, physical address, longitude and latitude, all sectors associated with each cell-site, azimuth, and beam-width of each related sector. If multiple technologies (CDMA, UMTS, GSM, LTE etc.) are referenced in the records, all appropriate corresponding cell site lists will also be provided.

7. **Subscriber Records:** All information for the following mobile number **7606878043** including:

   1. All Subscriber information to include name, tax identification number (social security number or employer identification number).
   2. Physical address, mailing addresses, residential addresses, business addresses, e-mail addresses and any other address information.
   3. Credit information obtained or used by the company to grant account status.
   4. All numbers associated with account.
   5. Billing records.
   6. All payments to include method, date and time of payments, and location (store name, address, and phone number of location where payment(s) were made).
   7. All Authorized users on the associated account.
   8. Activation date and termination date of each device associated with the account and above listed number(s).
   9. Types of service subscriber utilized (e.g. A-list, AT&T Messages, friends and family).
   10. Make, model, serial number, IMEI, ESN, MEID, and MAC address associated with the above listed numbers including any and all equipment or sim card changes for the life of the account.

USAO 015885

11. All customer service and account notes.

12. Any and all number and/or account number changes prior to and after the cell number was activated.

13. Any other records and other evidence relating to phone number **7606878043**.

Such records and other evidence include correspondence and other records of contact by any person or entity about the above-referenced account(s), the content and connection logs associated with or relating to postings, communications and any other activities to or through the above referenced phone numbers, whether such records or other evidence are in electronic or other form.

**Communications to be searched for and seized:** You are hereby ordered to search the Provider's electronic communication storage equipment for the following stored electronic communications. As used herein, the term "communications" includes written, photographic, video, and audio communications, voicemail, text message content, multimedia message content and email. The term "communication" includes written, photographic, video, and audio content.

**Communications data to be searched for and seized:** You are hereby ordered to search the Provider's electronic communication storage equipment, and any physical documents on the premises, for the following stored electronic communications data: Note to Provider: Please send all requested records in electronic format to the following email address: **jasonp@monosheriff.org**

**Delayed notification order**: The affidavit herein has established sufficient reason to believe that immediate compliance with the notice requirements set forth in Penal Code § 1546,2(a) will:

- ☒ Endanger the life or physical safety of an individual.
- ☒ Result in flight from prosecution.
- ☒ Result in tampering or destruction of evidence.
- ☐ Result in intimidation of a potential witness.
- ☒ Seriously jeopardize an investigation.

Accordingly, pursuant to Penal Code § 1546.2(b)(1), it is hereby ordered that neither the law enforcement officer(s) who execute this warrant nor Provider shall give such notification until one of the following circumstances exist: (1) there is sufficient reason to believe that the threat cited above will not occur, or (2) ~~the passage of 90 days from the date the warrant was executed.~~.

**Special instructions to Affiant**

**Seal unrelated information**: Pursuant to Penal Code § 1546.1(d)(2), all information that is unrelated to the objective of the warrant shall be sealed and is not subject to further review, use, or disclosure without a court order.

**Disposition of evidence**: Pursuant to Penal Code §§ 1528(a), 1536 all communications and/or data seized pursuant to this search warrant shall be retained in Affiant's custody pending further court order.

USAO 015886

**Special instructions to Provider**
**IMEI Search Parameters:**

IT IS ORDERED the Service Provider(s)/wireless carriers, upon the direction of any law enforcement agent, shall conduct an IMEI inquiry of the corresponding Subject Telephone Number(s) IMEI(s) to determine all IMSI/cellular telephone numbers utilized with the aforementioned devices (IMEI) from the time period Thirty (30) days prior to the signing of this warrant, up through the date this warrant is signed.

Any and all related Service Provider(s)/wireless carriers shall then provide account information, subscriber information, call detail records with cell site location information, SMS history and content, data sessions with IP addresses for logins, PCMD, RTT, historical GPS, TDOA (Time Difference of Arrival) or Timing Advance Information, Mediation Records, and NELOS data, for the IMSI/cellular telephone numbers identified from the aforementioned IMEI inquiry for the time period starting Thirty (30) days prior to the signing of this warrant, through the date this warrant is signed.

**IMSI Search Parameters:**

IT IS ORDERED the Service Provider(s)/wireless carriers, upon the direction of any law enforcement agent, shall conduct a search of the IMSI information corresponding to Target Telephone Number(s) beginning Thirty (30) days prior to the signing of this warrant until present, to determine if that IMSI was used in any other devices.

The respective Service Provider(s)/wireless carriers shall provide IMEI history information for all devices identified to include all associated IMSI/cellular telephone numbers for those devices beginning 11/19/2020 and continuing Thirty (30) days after the signing of this warrant, as authorized.

Any and all related Service Provider(s)/wireless carriers shall then provide account information, subscriber information, call detail records with cell site location information, SMS history and content, data sessions with IP addresses for logins, PCMD, RTT, historical GPS, TDOA (Time Difference of Arrival) or Timing Advance Information, Mediation Records, and NELOS data, for the identified IMSI/cellular telephone numbers for a period beginning 11/19/2020 and continuing for Thirty (30) days from the signing date of this warrant, as authorized.

**Verification**: If Provider is a foreign corporation as defined in California Corporations Code § 2105, it is required under California Penal Code § 1524.2(b)(4) to "verify the authenticity of records that it produces" by means of an affidavit that complies with the requirements set forth in California Evidence Code § 1561.

**Nondisclosure Order**: Pending further order of this court, the officers, employees, and agents of Provider are hereby ordered not to disclose information to any person that would reveal, or tend to reveal, the contents of this warrant or the fact that it was issued.

**Response time**: Pursuant to Penal Code § 1524.2(b)(1), Provider has five business days within which to respond to this warrant.

11/19/2020 @ 11:09 a.m.
Date and time warrant issued

[signature]
Judge of the Superior Court

USAO 015887

# SUPERIOR COURT OF CALIFORNIA
## County of MONO

## SEARCH WARRANT AFFIDAVIT
CalECPA General Affidavit

Penal Code §§ 1546 et seq.

20-SW-71

FILED

NOV 19 2020

SUPERIOR COURT OF CALIFORNIA
COUNTY OF MONO
BY:

SUPERIOR COURT COUNTY OF MONO OF CALIFORNIA

**Affiant's name and agency** Deputy Jason Pelichowski, Mono County Sheriff's Office.

**Place or thing to be searched**:

Cellco Partnership dba: Verizon Wireless

**Mailing address of service Provider**

Verizon Security Assistance Team (VSAT)
Attn: Custodian of Records
180 Washington Valley Road
Bedminster, NJ 07921
**Fax: (888) 667-0026**

**Evidence to be seized**: All records associated with mobile number **7606878043** for the dates of **06/01/2020 PST** to **11/19/2020 PST**

**Evidence type**: The described evidence appears to fall within the following classification(s) (Pen. Code § 1524):

- ✕ Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person committed a felony.
- ✕ Property or things used as a means of committing a felony.
- ✕ Property or things in the possession of a person with intent to use as a means of committing a crime, or in the possession of another to whom he may have delivered it for the purpose of concealment or preventing discovery.
- ☐ Property or things constituting evidence of sexual exploitation of a Child (Pen. Code §311.3), or possession of matter depicting sexual conduct of a person under the age of 18 years (Pen. Code § 311.11).

**Statement of Probable Cause**: Affiant declares under penalty of perjury that the following facts are true and that there is probable cause to believe, and Affiant does believe, that the designated articles, property, and persons are now in the described locations, including all rooms, buildings, and structures used in connection with the premises and buildings adjoining them, the vehicles and the persons:

I, Jason Pelichowski, I am a sworn peace officer within the meaning of California Penal Code 830. I have been employed as a California peace officer for approximately the past 4 years. I am currently employed as a Deputy Sheriff with the Mono County Sheriff's Department, California, and have been employed as such since June of 2017. Prior to this your I was a full time Peace Officer for the California Highway Patrol from, April 2016 till May 2017. I hold the rank of Deputy Sheriff and am currently assigned to patrol.

USAO 015888

I have attended and completed the California Highway Patrol Basic Law Enforcement Academy at the California Highway Patrol Training Center. I have also attended numerous courses, which include, but are not limited to the following: Driving under the Influence, Missing Persons, Advanced Roadside Impaired Driving Enforcement, FBI Crisis Negotiator Certification. During my career I have completed approximately 1,789 hours of training, including over 24 hours of training relating specifically to drug abuse recognition. I received a 40 hour course on basic narcotic investigations presented by the academy. I have, throughout the course of my career as a part of my regular duties, investigated numerous crimes including burglary, theft, receiving and/or selling stolen property, crimes of violence, sex crimes, narcotics and illegal drug related crimes, crimes against children.

Your Affiant has participated in at least twenty (20) search warrants where illegal drugs and/or drug paraphernalia or other items of evidence related to criminal investigations were located and seized. Your Affiant has also been the primary investigator and/or assisted in the investigation of at least one hundred and fifty (150) property crime investigations, in at least fifteen (15) sex crime investigation, in at least one hundred (100) crimes of violence investigations and at least fifty (50) crimes involving the use and/or possession of illegal drugs

In the course of your Affiant's career as a law enforcement officer, your Affiant has had the opportunity to speak with numerous fellow officers who have had more experience than your Affiant in the investigation and apprehension of those involved in crimes against persons and as well as burglaries and thefts.

**PROBABLE CAUSE:**

On Monday, November 9, 2020 at about 0625 hours, Mono County Deputies were dispatched to US Highway 395 north of Buckeye (Bridgeport area) regarding two possible deceased subjects with shell casings around the roadway and near the bodies.

Responding Deputies located the subjects, later identified as Yesenia and William Larson of Burbank California. Deputies determined that the deaths were possible homicides based on the amount of fired cartridge casings, injuries to subjects and overall scene. The scene was secured by closing US 395 near the crime scene in both north and south directions of travel. San Bernardino Crime Scene Investigation's unit was requested and responded to the location to process the scene.

At the conclusion of processing the scene it was determined that the victims sustained several apparent gunshot wounds likely 9 mm and 22 caliber based on the fired cartridge casings. In addition to the gunshot wounds, the victims sustained several apparent stab wounds from an edged weapon. Both subject's necks had large severe cuts in the front and later determined to have lacerated tracheas, and spinal cords. The decedent's bodies were later transported to the orange County Coroner's Laboratory for autopsy.

On Tuesday 11-10-2020 at approximately 0230 hours, Investigator Gillespie and I were contacted by the California Highway patrol in regards to a possible abandoned vehicle located S/B US395 near the Van Dyke Hill area south of Bridgeport. CHP Officer's advised the vehicle was unlocked, had a cell phone, keys and a wallet laying on the center console and there appeared to be blood within the vehicle. The vehicle was ran through the system, came back registered to William Larson who was determined to be the male victim. The vehicle was sealed off and a request for San Bernardino Crime Lab was made to process the vehicle.

Through talking with family and friends of the victims it has been determined William Larsen was involved with Marijuana cultivation, sales, and transportation which has all been verified through criminal history documentation. Investigators were also able to determine William had some type of falling out with a former business partner in the "Marijuana business." Family and friends explained the business partner was a very "scary" person who has bragged about killing people.

USAO 015889

Through investigative means, Investigators learned William had ties with a missing person from June 2020. According to investigators from the Lyon County Sheriff's Department, and the Carson City Sheriff's Department, the missing person, Jered Stefansky, went missing while conducting illegal marijuana cultivation, sales, and transportation from Redding California to Mound House Nevada. Bradley Robert Kohorst and Cory Scott Spurlock are known business and military associates of William Larsen.

Investigators obtained search warrants for Verizon Wireless cell sites in the area of the homicide. The information obtained from the search warrants revealed cellular identification data as well as call information data from the cell site during the time frame of the homicide. After reviewing the data from the search warrants it was determined the telephone number 4062141975 made a phone call to 5305219788 at 2038 hours for a duration of 11 minutes and 35 seconds from the cell site in the direct vicinity of the homicide scene. Investigative research showed 5305219788 belonged to Vanessa Rose Covin, aka Vanessa Rose Larsen, William Larsen's ex-wife. Investigative research was unable to determine the owner of 4062141975 thus a search warrant for this number could provide critical subscriber information to identify a suspect. The cell site information also revealed multiple calls between 4062141975, 4063700475, 7753998466 between 1952 hours and 2020 hours which is the time frame of the homicide and just after when the victim vehicle was left abandoned south of Bridgeport. Cell site records show a call from 4062141975 (unknown subscriber) to 8182091368 (Yesenia Larsen's cell phone) at 1956 hours.

4062141975 – Unknown subscriber information
7753998466 - Unknown subscriber information
5305219788 – Vanessa Rose Covin (William Larsen's ex-wife)
4063700475 – Orit Oged (Cory Spurlock's current wife)

Several phone calls were made between the above listed numbers during the homicide time frame. An outgoing phone call was made to William's ex-wife from one of the same numbers. All involved phone calls were utilizing a cell tower near the location of the homicide. Based on the information gathered during the investigation, it is reasonable to believe the callers were involved in the homicide of William and Yesenia Larsen.

Due to data obtained from search warrants on the above listed number, Investigators have been able to determine the suspects immediately travelled from Bridgeport California just after the time of the homicide, to Missoula Montana. Bradley Kohorst, Cory Spurlock, and Orit Oged all share a listed address of 4825 Monticello Place, Missoula Montana 59808. Investigative research shows a Verizon Wireless cell phone number of **7606878043** being associated and/or registered to Cory Spurlock. It is believed Spurlock purchased a burner phone to use during the commission of the homicide. It is reasonable to believe Spurlock would have also possessed his permanent cell phone **7606878043** during the crime, as well as during travel to and from the location of the crime.

Based on my training and experience I know suspects who are involved in or have committed a serious crime are known to destroy evidence and flee from law enforcement in order to avoid prosecution. Both current and historical location data are being requested in an attempt to preserve evidence and locate fleeing suspects.

Due to the nature of the homicide, involved parties and circumstances I believe a search of the above listed cellular telephone information for item's listed in the affidavit will help provide additional evidence to the case.

I have a general understanding of how the cellular telephone network operates. I am aware that cell sites (towers) are strategically placed by cellular service providers, to provide a seamless operation so people can travel virtually anywhere and make or receive an uninterrupted call, send or receive text messages, or initiate a data session via their cellular phone. Usually, cell sites will be mounted high on a large pole, building, or

USAO 015890

other structure which provides line of sight with the population below. Cell sites are typically divided into sectors, which are made up of antennas connected to cellular radio transceivers. Each sector is mounted on the cell site and faces a specific direction to provide maximum cellular coverage for the people in the area. The range of the cell site and sectors depends on many factors to include environmental and geographic factors and whether it is located in a highly populated, urban environment or desolate rural area. Cell site location information (CSLI) does not provide an exact location of a cell phone; the basic call detail record data only provides the physical location of the cell site (latitude and longitude) and a direction (azimuth) the antennas are facing from the cell site. Information regarding the target number was obtained from one specific cell tower location near the homicide crime scene. Further cell site information will assist in locating the suspect or suspects responsible for the homicide.

I am aware when a person either initiates or receives a voice call, text message, or a data session (usage event) from their cellular device, the device broadcasts signals to the cell site that routes its communications. These signals include a cellular device's unique identifiers as well as details about the usage event. I am also aware cellular service providers collect and store these usage event details (transaction records) associated with cellular phone numbers during the normal course of business. The usage event records, commonly referred to as call detail records, stored by their respective cell phone company, mostly contain the following information with some exceptions based on the specific carrier: Date, time, type of event, duration, phone number initiating the usage event (called, calling), even if caller identification is blocked by the calling party, text message transaction data, the international mobile equipment identifier (IMEI), the international mobile subscriber identifier (IMSI), IP packet data session logs, and cell site location and sector information at the beginning and ending of each usage event.

I believe such information is relevant and material to the ongoing criminal investigation as it may provide investigators with information supporting or refuting the suspect's alibi, and assist with determining other unidentified co-conspirators, and/or show the general geographic location of the target device before, during, and after the commission of the crime. This is basic information and does not provide an exact location of the person's cell phone nor does it identify the other parties.

I am aware that obtaining and preserving historical cell phone call detail and specialized location records could also prove to be fruitful, as such records could assist investigators not only with identifying those who may have been in contact with the victim(s) or potential co-conspirators, but may also allow investigators other opportunities, including, but not limited to, confirmation or the disproving of alibis, statements, and other observations.

I know that these records such as those associated with the target phone, are not kept or preserved indefinitely by the cellular service providers and are purged at different intervals. Obtaining and preserving these records at this point in the investigation will ensure the investigators assigned to the case will have them available, and if the case were to go "cold", future investigators will have access to the records which would otherwise likely not be obtainable. Not only could the preserved records assist in proving one's guilt, they could also assist in proving one's innocence.

**Specialized Location Records:**

I am aware cellular service providers maintain specialized location records consisting of engineering data. These data sets are used by the providers to troubleshoot coverage areas and report back on potential dead spots, all with the intent to oversee and optimize the cellular network. Specialized location records typically contain data for every usage event, to include technology details (e.g. voice, text, data), resource usage, and call failure information. They can also include data for incomplete calls (e.g. denied calls and set-up failures). These records not only include the basic call detail records, but also an estimation of the target phones location (Latitude and longitude) with a possible accuracy radius, and/or the distance from the cell site at the time of the usage event. Utilizing specialized location records can provide investigators with a much smaller footprint of a target phones location and could place a target phone within close proximity of a crime scene before, during and after a crime. Each carrier uses their own nomenclature to describe the technology

used to obtain this data including: NELOS (Network Event Location System) – AT&T, RTT (Round Trip Time/Return Trip Time/Real Time Tool) - Verizon & U.S. Cellular, PCMD (Per Call Measurement Data) – Sprint & U.S. Cellular, and TDOA (Time Difference of Arrival) or Timing Advance Information – T-Mobile & Metro by T-Mobile. I believe this information is relevant and material to the investigation as it provides supplemental geo-location information which, while not precise enough to identify a specific house, is accurate enough to provide block-level accuracy, in some cases. Investigators can use this information to correlate existing fact patterns and timelines to confirm or refute prior statements and/or evidence regarding the location of the target device.

**Call/Text/Data Detail Records & Electronically Stored Records:**

I am seeking evidence of communication between identified subject(s) and previously unidentified individuals and entities. In my training and experience, associates communicate together via phone calls, text messages, and social media applications via data sessions and these communications most commonly occur on or through cellular devices.

In my training and experience individuals often use digital devices and cellular devices to post messages to others on social networking applications. In my training and experience it is possible for cellular phone users to use a variety of messaging platforms including the cellular SMS and MMS technology, as well as third-party applications like Facebook Messenger, WhatsApp, Snapchat, iMessage, and many other applications. Therefore, I seek to search all the communication evidence maintained by the service provider.

I am also seeking evidence of association. I know that establishing the association of co-conspirators is important in proving a concert of action between multiple persons. In my training and experience, one of the most effective methods of linking co-conspirators together is by reviewing the call detail records maintained by the cellular service providers. In my training and experience, associates communicate together via voice calls, text messages and third-party applications by means of a data usage event, therefore I am seeking the call detail record evidence to demonstrate the associations of the individuals in this case. Because this evidence is intended to be used to show associations of the user/owner of the device and co-participants, I am seeking the above items regardless of the dates the information was created.

**Stored Data (Cloud Storage):**

I am aware cellular service providers offer their customers optional free or paid backup digital storage for some of the content stored on their device. These services are offered to secure and restore their digital information in the event their mobile device is lost or stolen. Because these digital storage services are remote and transparent to the consumer, they are often referred to as 'cloud' storage. Customers can elect to digitally store the contents of their electronic phone book including details of their contacts, names, phone numbers, email addresses, and other data, calendar events, short message service (SMS) messages, commonly referred to as text messages, multimedia message service (MMS) messages, consisting of pictures, videos, and/or audio files with or without accompanying text, call logs of incoming, outgoing, and missed calls, digital images and videos, music and audio files, and electronic files such as documents and spreadsheets. I believe this information is relevant and material to the matter at hand as the contents of the remote digital storage may contain information presently unavailable to investigators including: associated identifying information from the user's contacts which would tend to identify possible suspect's, witnesses, associates, and/or co-conspirators, the content of messages sent between those parties, digital images and videos which may contain evidence of the crime under investigation, and documents related to same.

**Cell Site List(s):**

I am aware cellular service providers maintain a master cell site list of all cell sites within their network. These cell site lists will include the specific switch, cell site number, name, physical address, latitude and longitude of the cell site, all sectors associated with each cell site, azimuth, and beam-width of each related sector. When reviewing call detail and specialized location records from the carriers, the records may only

USAO 015892

reference a specific switch, cell and sector, or LAC and CID/eNodeB ID, related to each usage event; they usually will not include the location (latitude and longitude) of the actual cell site and azimuth of the sector. It becomes necessary to reference a cell site list in order to plot the exact location of the cell site and to identify the azimuth of the sector used associated with specific usage events.

Also, in the course of the investigation and review of the call detail and specialized location records, it may become necessary to visualize all cell sites within a geographic region of interest, not just the cell sites used by the target phone. It is just as important to show cell sites not used by a target phone, as it is to show cell sites used. By obtaining the master cell site lists from the cellular service providers, investigators are able to plot all of the cell sites in a given region, helping investigators with disproving of alibis, statements, and other observations evidenced by the records.

**Subscriber Records:**

I am seeking evidence of ownership, use, and identification of the subscriber, customer or owner of the electronic communication information contained in the records retained by the cellular service provider. I am aware, depending on whether the account is post-paid or pre-paid, a consumer must provide information to the cellular service provider. Post-paid accounts are credit based whereby a customer is provided service and then billed after the provision of services. These types of accounts require sufficient identifying information to enable the cellular service provider to make a determination regarding credit worthiness and recourse in the event the consumer defaults on their contractual agreement. The information required by most cellular service providers include the customer's personal identifying information, verified using government issued identification or other means, residential address, alternate contact phone numbers, and electronic mail (email) address(es). Additional information can include the type of service plan, additional features subscribed to, such as cloud storage and additional phones on the same account, device type and unique identifiers including IMEI and IMSI, method and source of payment information including financial institution and direct billing checking account numbers, credit or debit card numbers, and/or third-party payment processors, and customer service representative account comments and notes. I believe this information is relevant and material to the matter at hand as it serves multiple purposes including: identifying the subscriber to the target phone number, providing investigators with additional information and leads including subscriber address, additional phone numbers, and/or email addresses, device identifiers used to correlate any seized phones with the account, previously unidentified phones subscribed to on the same account, and financial information. I know that ownership and control of a digital device can be placed at issue through a simple denial, "that is not my phone." In my training and experience some of the best ways to establish ownership and control are by reviewing account information and subscriber records from cellular service providers.

**Declaration**: I declare under penalty of perjury that the information contained herein and the information that is incorporated by reference is true when based on my personal knowledge. I further declare that information contained herein that was not based on my personal knowledge was received by me in the course of the matter under investigation and that I have no reason to believe that any of this information was untrue.

11/19/2020 [signature]

Date Affiant

USAO 015893




The foregoing instrument is a full, true and correct copy of the original on file in this office.

NOV 06 2024

Attest ____________________

The Superior Court of the State of California, in and for the County of Mono.

By ____________________, Deputy

USAO 015894