UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:23-cr-00022-MMD-CLB-1 |
| Plaintiff, | ORDER |
| v. | |
| CORY SPURLOCK, | |
| Defendant. | |

I.    **SUMMARY**

Defendant Cory Spurlock was indicted for murder-for-hire conspiracy and conspiracy to distribute marijuana. (ECF No. 1.) The third superseding indictment expanded the scope of the case to charge eight counts involving three deaths (victims J.S., W.L. And Y.L.).[1] Trial was scheduled for April 22, 2025, but was recently continued to June 3, 2025. (ECF No. 381.) This order addresses the dispositive motions that were fully briefed before the latest continuance of trial: motions to dismiss counts 2, 3, 4, 7 and 8, and motion to dismiss this action for pre-indictment and post-indictment delays. (ECF Nos. 243, 253 (sealed)[2], 255, 256, 259 (sealed), 263.)[3] Also before the Court is Defendant's renewed motion to sever. (ECF No. 244.) For the reasons discussed below,

---

[1]The third superseding indictment was returned on September 12, 2024. (ECF No. 160.) After Defendant filed the motion to dismiss count 4, the government sought a fourth superseding indictment, filed on April 3, 2025, to correct legal deficiencies as to that count. ECF No. 342.) On April 10, 2025, the grand jury return a fifth superseding indictment, charging the same eight counts but including allegations under 18 U.S.C. §§ 3591 and 3592 to support its notice of intent to seek the death penalty. (ECF Nos. 363, 365.) This order does not address this latest indictment or notice.

[2]The Court granted requests to seal and where appropriate in this order, the Court has redacted information that should be sealed for compelling reasons. The Court will issue a separate unredacted version of this order under seal.

[3]Defendant requested oral argument on these motions, but the Court determined that only the motion to dismiss for government delays warranted a hearing, which was held on April 9, 2025 ("Hearing"). (ECF Nos. 326, 362 (hearing minutes).)

the Court denies each of the five motions to dismiss and further denies the motion to sever.

## II.    RELEVANT BACKGROUND

On May 11, 2023, the grand jury returned the original indictment charging Defendant with murder-for-hire conspiracy relating to the killing of W.L. (count 1) and conspiracy to distribute marijuana (count 2). (ECF No. 1.) At the initial appearance held on the same day, the government moved for detention, which the Magistrate Judge granted. (ECF No. 6.) The Court later denied Defendant's motion to review the detention order. (ECF No. 174.) Thus, Defendant has been in pretrial detention as part of this case since May 11, 2023.

Since the initial indictment, the case has expanded in scope to include charges related to three deaths. (ECF Nos. 84, 127, 160.) The third superseding indictment, returned on September 12, 2024, charges Defendant with eight counts: (1) conspiracy to possess with intent to distribute and to distribute marijuana between November 2019 and June 2020; (2) murder while engaged in narcotics trafficking relating to the killing of J.S. between November 2019 and June 2020; (3) murder for hire relating to the killing of W.L. between October 2020 and March 2021; (4) tampering with a witness by killing of W.L. on or about November 2020; (5) stalking resulting in death relating to W.L. between October and November 2020; (6) stalking resulting in death relating to the killing of Y.L between October and November 2020; (7) interference with commerce by robbery in November 2020; and (8) causing death through use of a firearm during and in relation to a crime of violence in November 2020. (ECF No. 160.) In response to Defendant's motion to dismiss count 4, the government obtained the fourth superseding indictment, returned on April 3, 2025, which charges the same eight counts but with modifications to count 4. (ECF No. 342.)

Because Defendant faced death eligible charges, the case went through the Department of Justice's capital case review process. (ECF No. 93 at 6.) The government

did not submit an expedited no-seek decision for Defendant's death eligible charges.[4] (*Id*.) At a January 9, 2024, status conference, after conferring with counsel as to the schedule for completion of the capital case review, the Court set a deadline for the government to make a decision on whether to seek the death penalty by August 16, 2024, and continued trial to November 5, 2024, assuming a no-seek decision.[5] (ECF No. 132 at 5-21.) On July 31, 2024, the government filed a notice of intent not to seek the death penalty (ECF No. 138), and on August 19, the Court further continued trial to April 22, 2025. (ECF No. 150).

On February 5, 2025, about two months before the April trial date, the defense team was informed that the Department of Justice was reconsidering its no-seek decision. (ECF No. 253 at 17.) At the government's invitation, the defense team presented mitigation evidence to the Capital Review Committee on March 10, 2025. (*Id*.) On April 10, 2025—after Defendant's motions to dismiss were filed and the Hearing—the government filed a fifth superseding indictment adding allegations under 18 U.S.C. §§ 3591 and 3592 (ECF No. 363) and a notice of its intent to seek the death penalty (ECF No. 365).

Trial was initially set for July 25, 2023. (ECF No. 6.) In total, the Court has continued trial four times, first to February 6, 2024 (ECF No. 47), then to November 5, 2024 (ECF No. 95), then to April 22, 2025 (ECF No. 150), and finally to the current trial date of June 3, 2025 (ECF No. 381). Defendant objected to every continuance, primarily because of his pretrial detention, while his attorneys acknowledged that they needed more time to prepare to effectively represent Defendant.[6] (ECF Nos. 47, 97, 150, 381.)

---

[4]The government asserts that Defendant did not qualify for the expedited process. (ECF No. 139 at 14.)

[5]The government did not object to the deadline. (ECF No. 132 at 6, 15-16.)

[6]The Court found that the final continuance to June 3, 2025, was predicated solely on the government's notice of intent to seek the death penalty. (ECF No. 381.) While the government indicated that they would need at least a 90-day continuance to prepare to prosecute the case as a capital case, the Court considered the time needed to resolve *(fn. cont…)*

As relevant to Defendant's argument regarding pre-indictment delays, Defendant, along with two individuals, B.K. and O.O., were charged with the murders of W.L. and Y.L. in a three-count criminal complaint filed in the Mono County Superior Court in April 2021. (ECF Nos. 93 at 3, 355 at 2 n. 4.) In April 2021, Defendant was taken into custody and remained in state custody until his transfer to federal custody in connection with this case.[7] (*Id.* at 4.)

In the summer of 2022, the U.S. Attorney's Office for this district started to work with Mono County Sherriff's Office, Mono County District Attorney's Office, and other federal law enforcement agencies on "an investigation into a multi-state marijuana drug trafficking organization involving several individuals and three related homicides" (the same three deaths ultimately charged in this case). (139 at 12.) ███████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████

## III.  DISCUSSION

On March 12, 2024, addressing the then-operative third superseding indictment, Defendant filed five motions to dismiss, requesting dismissal of the case for pre- and post-indictment delay (ECF Nos. 253 (sealed), 263), and dismissal of five individual counts (ECF Nos. 243, 255, 256, 259 (sealed) (addressing counts 2, 3, 4, 7, and 8).) Defendant

---

the motion to strike the notice to seek and to issue jury summons in determining the length of the continuance. (*Id.*; ECF No. 384 at 22-23.)

[7]Defendant represented that he was arrested in connection with the Mono County case in Montana on March 25, 2021. (ECF No. 142 at 3 n. 3.)

1    also filed a renewed motion to sever counts 1 and 2 from counts 3 through 8. (ECF No.

2    244.) The Court considers each motion in turn.

3        **A.    Motion to Dismiss Indictment for Government Delays (ECF Nos. 253**
         **(sealed), 263)**

4

5        Defendant seeks dismissal based on the government's delay in indicting him and

6    its further delay prosecuting the action post-indictment. (ECF Nos. 253 (sealed), 263.[8])

7    The Court addresses these pre- and post-indictment delay grounds below.

8                    **1.    Pre-Indictment Delay**

9        Defendant argues that pre-indictment delay warrants dismissal because

10   approximately two years passed between his arrest and charge in connection with the

11   Mono County case in 2021 and his indictment in this federal case in May 2023. (ECF No.

12   263.) But in affirming the Magistrate Judge's pre-trial detention order, the Court accepted

13   the government's explanation that its investigation into this case started in May 2022,

14   finding a lack of evidence that the government "improperly delayed conducting its own

15   investigation" before seeking an indictment in this case. (ECF No. 174 at 4.) Thus, as an

16   initial matter, the Court considers the pre-indictment delay to amount to roughly one year,

17   between from May 2022 to May 2023.

18       While delay between the commission of a crime and an indictment is generally

19   limited only by the applicable statute of limitations, the Fifth Amendment also guarantees

20   a defendant the right not to be denied due process by extensive pre-indictment delay.

21   *See U.S. v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007). To "succeed on his

22   claim that he was denied due process because of pre-indictment delay[,]" a defendant

23   must "satisfy both prongs of a two-part test[.]" *Id.* "First, he must prove 'actual, non-

24   speculative prejudice from the delay.'" *Id.* (citation omitted). "Second, the length of the

25   delay is weighed against the reasons for the delay, and [the defendant] must show that

26

27

28       [8]The government responded (ECF No. 320 (sealed)) and Defendant replied (ECF
     No. 352).

the delay offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* (citations and internal quotation marks omitted).

The Court only proceeds to the second prong of the pre-indictment delay analysis if the first is satisfied, and the first, 'actual prejudice' requirement is a "'heavy burden' that is rarely met." *Id. See also U.S. v. Marion*, 404 U.S. 307, 322, 324-325 (1971) (concluding defendants had not shown actual prejudice); *U.S. v. Talbot*, 51 F.3d 183, 185 (9th Cir. 1995) (same); *U.S. v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998) (same). To illustrate the weight of this burden, it is telling that no court in any of the cases Defendant cites dealing specifically with pre-indictment delay actually granted a motion for pre-indictment delay like the one here. (ECF No. 253 at 23 (relying on *Marion*, 404 U.S. at 322, 324; *Talbot*, 51 F.3d at 185; *Doe*, 149 F.3d at 948); *U.S. v. Pallan*, 571 F.2d 497, 500 (9th Cir. 1978); *U.S. v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir. 1989)).) The courts in each of these cited cases concluded that defendants had not shown actual prejudice. *See Marion*, 404 U.S. at 325; *Talbot*, 51 F.3d at 185-86; *Doe*, 149 F.3d at 947-49; *Pallan*, 571 F.2d at 499-501; *Sherlock*, 962 at F.2d at 1354-55.

Here, on the first prong, Defendant relies on the length of incarceration in the state case and lost evidence to show prejudice. (ECF No. 253 at 23-24. As to the former, Defendant contends that "the primary source of prejudice here is the lengthy prior incarceration in a state case that mostly sat stagnant while the government took advantage of the lengthy period of pretrial incarceration that separated Mr. Spurlock and his wife and made overt—and ultimately successful—attempts to pit one spouse against the other." (*Id.* at 24.) The records here, as the Court found, do not support Defendant's claim that the government is responsible for the time he spent in state custody. (ECF No. 174 at 5-6.) ███████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████

As for lost evidence, the Court agrees with the government that Defendant has not shown "'actual, non-speculative prejudice from the [pre-indictment] delay," *Corona-Verbera*, 509 F.3d at 1112, because Defendant's claim of prejudice is again too speculative. Defendant first argues that Brandon Stelzreide shared in his interview with the government that W.L. asked him if he would kill for $20,000. (ECF No. 253 at 23.) Defendant would have elicited this statement at trial, he asserts, but Stelzreide passed away in July 2023. But Stelzreid's unfortunate passing occurred two months after Defendant was indicted, so the loss of that potential evidence was not a result of the government's delay. Moreover, as the government points out, Stelzreide was appointed counsel because of his alleged involvement in the marijuana conspiracy, and his testimony would have inculpated Defendant. (ECF No. 320 at 20.) Similarly, Defendant suggests a cooperating witness "became subject to a federal drug investigation into his own illegal activities while Mr. Spurlock sat in jail" and because this witness is now represented by counsel, he "is likely unavailable to the defense." (ECF No. 253 at 24.) The government responds that this witness has been in custody since November 2022—before Defendant's indictment in this case—and the government does not plan to call him as a witness. (ECF No. 320 at 12, 20.) Regardless, Defendant may call this witness and may contact him through his counsel, and to the extent this witness now declines to be accessible to defense counsel because he is represented, the Court cannot attribute such refusal to the government's delay in indicting him.

The Court therefore finds that any prejudice Defendant has suffered through the loss of evidence is too speculative to weigh in favor of granting the motion. *See Corona-Verbera*, 509 F.3d at 1112 (explaining that the defendant failed to satisfy the first prong, and that the Court need not move past the first prong if it is not satisfied); *Pallan*, 571 F.2d at 501 ("While this testimony may have been of some benefit to [the defendant], he has not made a non-speculative demonstration that its loss has actually impaired his ability meaningfully to defend himself.").

Alternatively, even if Defendant had shown the requisite prejudice under the first prong, the Court finds the delay in this case does not offend its conception of justice under the second prong after weighing the length of the delay against the government's proffered reasons for the delay. *See Corona-Verbera*, 509 F.3d at 1112 (explaining second prong). The government took about a year—from May 2022 to May 2023—to indict Defendant on federal charges. But this is not an unduly long delay in the context of cases on which Defendant relies. *See, e.g.*, *Pallan*, 571 F.2d 497 (finding no due process violation where there was a five year delay before indictment); *Doe*, 149 F.3d 945 (no violation resulting from four year delay). Moreover, as to the reasons for the delay, the government explains the need to conduct its own investigation given the broader scope of this case. (ECF No. 174 at 4.) This explanation does not evidence the kind of government culpability normally required for a defendant to establish a due process violation. *See U.S. v. Moran*, 759 F.2d 777, 783 (9th Cir. 1985) (finding no due process violation and noting "our cases clearly require some showing of governmental culpability to prove a deprivation of due process."); *Pallan*, 571 F.2d 497 (finding no due process violation even where the federal prosecutor waited for a state prosecution to conclude before indicting, evidencing a tactical reason for the delay which suggested a level of government culpability not present here). Thus, the Court alternatively finds Defendant's motion fails to persuade at the second prong.

### 2. Post-Indictment Delay

Defendant next argues that dismissal for post-indictment delay is appropriate because the government's action or inaction affected Defendant's preparedness for trial, resulting in three continuances of trial, each time over Defendant's objection.[9] (ECF No. 253 at 26.) Defendant's counsel acknowledged the need for these continuances. (ECF No. 173 at 3 (citing ECF Nos. 47, 97, 150).) And in granting the three continuances, the Court carefully weighed the justifications for continuing trial with Defendant's right to a

---

[9]The Court does not address the fourth continuance to June 3, 2025, which post-dates the dismissal motion, in its analysis of the delay.

speedy trial in excluding the length of the continuances under the Speedy Trial Act, 18 U.S.C. § 3161. (ECF Nos. 47, 97, 150.)

For context, the Court will briefly summarize the reasons for the continuances from July 25, 2023 (ECF No. 6) to February 6, 2024 (ECF No. 47), then to November 5, 2024 (ECF No. 95), and finally to April 22, 2025 (ECF No. 150). The first continuance was necessary because of the need for the Court to resolve a motion for appointment of conflict counsel, and in resolving that motion following an evidentiary hearing, the Court rejected any suggestion that the government had no basis to bring the motion. (ECF No. 174 at 5 n. 6.) Moreover, even before resolution of that motion, at the July 23, 2023, status conference, it was obvious that defense counsel would need a continuance to effectively represent Defendant, given that not much had occurred in the case in terms of discovery, but also in terms of defense team's trial preparation, at that time. While the Court continued trial to February 6, 2024, it was clear that the trial date was a placeholder and was not a firm trial setting given the status of the case and the death eligible count. The second continuance to November 5, 2024, was necessitated by the need to complete the DOJ's capital case review process, which defense counsel argued should not commence until they had the final death eligible charges.[10] (ECF No. 132 at 10.) The Court essentially adopted defense's proposed schedule, with modifications as to the trial date and a shortened deadline for completion of the capital case review, setting a deadline for the government to complete the capital case review process by August 16, 2024, and for trial

---

[10]In the December 18, 2023 status report, defense counsel explained the need for continuance and explained that setting a "firm" trial date may be premature:

> If this Court concludes that its own case management practices and/or the Speedy Trial Act require the setting of a new trial date at this time, since clearly the February 2024 trial date is not constitutionally viable, Mr. Spurlock's counsel and counsel for the United States agree that it should not be a "firm" trial date and that it is, therefore, premature for the Court to set deadlines for the filing of pre-trial motions or for pre-trial disclosures.

(ECF No. 93 at 11.)

1    to proceed in that event. (*Id.* at 10-21.) The government issued the notice of intent not to

2    seek death ahead of that deadline, on July 31, 2024. (ECF No. 138.) At a status

3    conference held on August 19, 2024, while the parties had some disagreements—

4    including about the reason the government did not seek a second superseding indictment

5    to add additional death eligible charges until July—it was clear a further continuance of

6    trial was needed. At the status conference, the Court heard from the parties as to the

7    state of discovery, which defense counsel described as "complex and technical" and

8    government counsel described as "almost unprecedented"[11], and further heard the

9    parties' positions on "the timing of the discovery relative to the trial date" and the

10    anticipated pretrial litigation.[12] (ECF No. 183 at 5-11, 13-20.) The Court reluctantly agreed

11    with the parties about the need for the continuance and continued trial to April 22, 2025.

12    (*Id.* at 27-29, 31-32.) The Court emphasized that the April setting was firm. (*Id.* at 22.)

13        As opposed to the simple arithmetic of adding up non-excludable days to

14    determine a Speedy Trial Act violation, courts analyzing a Sixth Amendment Speedy Trial

15    violation conduct a four-factor balancing test, considering: (1) the length of the delay, (2)

16    the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the

17    defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). "[T]hese factors have no

18    talismanic qualities; courts must still engage in a difficult and sensitive balancing process."

19    *United States v. Lam*, 251 F.3d 852, 855-56 (9th Cir. 2001) (quoting *Barker,* 407 U.S. at

20    533; *United States v. Gregory,* 322 F.3d 1157, 1161 (9th Cir. 2003)). Weighing these

21    factors, while the Court notes concerns about the manner in which this case has

22

23

24    [11]Government counsel expounded on the complexity of electronic discovery, including the number of phones involved and the fact that messages were exchanged on

25    mobile applications (i.e., Signal and WhatsApp) that are not easily extracted and translated to a Cellbrite report, as well as the "overwhelming" physical evidence. (ECF

26    No. 183 at 17-18.)

27    [12]Defense counsel also noted the government's delay in superseding in July instead of March, as they represented at the prior status conference. (ECF No. 183 at 5.)

28    Government counsel represented that they intended to seek a third superseding indictment in light of the Court's order granting severance. (*Id.* at 14.)

1  proceeded, the Court finds that the post-indictment delay contemplated in the motion and

2  at the Hearing has not violated Spurlock's Sixth Amendment rights.

3          First, as to the length of the delay, the Court considers "whether the time from

4  indictment to trial crossed the line dividing ordinary from 'presumptively prejudicial,'"

5  which is normally considered to be approximately a year. *See United States v. King,* 483

6  F.3d 969, 976 (9th Cir. 2007) (quoting *Doggett v. United States,* 505 U.S. 647, 652

7  (1992)) (finding delay of about two years in a case involving charges of bank fraud and

8  conspiracy was "not excessive," though defendant was not in pretrial custody). The delay

9  here—of about two years—while substantial, is not excessive given that this is not an

10  ordinary case. (ECF No. 93 at 11 (defense status report asserting that "[t]his is a complex

11  case with voluminous and highly technical discovery requiring forensic analyses").) *See*

12  *Barker*, 407 U.S. at 530-31 (noting the length-of-delay inquiry depends on the "peculiar

13  circumstances of the case"). Defendant faces death eligible charges, necessitating the

14  DOJ's capital case review protocols. The nature of the charge—involving three alleged

15  murders in two states in the context of an alleged conspiracy to traffic in marijuana—and

16  attenuated voluminous and technical discovery (as discussed further below) separates

17  this case from the ordinary case and is important context for the length of the delay. The

18  government also points to examples of cases involving murder charges from this district,

19  including a death eligible case over which this Court presided which took 2.5 years to go

20  to trial, to show that a two-year delay is on the shorter end of delays in comparatively

21  complex cases. (ECF No. 320 at 11.) *See United States v. Burciaga,* 3:20-cr-60-MMD-

22  CLB, ECF No. 68 (notice of intent not to seek death penalty).) Given the nature of the

23  case, the length of delay factor weighs against a finding of a Sixth Amendment violation.

24          The second factor, reason for the delay, also weighs slightly against a finding of a

25  Sixth Amendment violation. There is no dispute the offenses charged are serious, the

26  case is complex and evolving, and the discovery has been extensive and technical.

27  Reviewing this context as a whole, the Court does not find the government bears primary

28  responsibility for the delay leading up to the April 22, 2025, trial date because of its action

1  or inaction, or that it "misrepresented the source of those delays" as Defendant

2  contends.[13] (ECF No. 253 at 27 (arguing the government misrepresented the reasons for

3  superseding).) Defendant offers primarily the number of superseding indictments and the

4  timing of discovery, including delayed discovery disclosure weeks before trial that

5  "impaired" the defense's ability to prepare for trial.[14] (*Id.* at 28.)

6      The Court begins with the number of superseding indictments. The government

7  provided valid reasons for its decision to superseding three times (by the time of its

8  response), including the year it took to supersede to add charges relating to J.S.'s death.

9  At the Hearing, government counsel represented that the delay in adding charges relating

10  to J.S. occurred because the government was waiting for O.O. to plead guilty; while the

11  government may have had probable cause to seek an indictment, they wanted to ensure

12  they had evidence beyond a reasonable doubt. "A prosecutor may have wide latitude to

13  decide when to seek an indictment, especially when a case [such as this one] involves

14  more than one person." *Sherlock,* 962 F.2d at 1355. In light of this discretion—and given

15  the government's proffered reason for the timing of the superseding indictments—the

16  Court cannot find the government engaged in intentional delay.

17      As for the timing and pace of discovery, there is no dispute that the discovery in

18  this case is voluminous, technical and complex. (ECF No. 183 at 5-11, 13-20.) Defendant

19  _____

20  [13]The Court does not consider Defendant's argument in their briefs relating to the
    anticipated notice to seek death penalty even though DOJ's re-examination of the prior
21  no-seek decision disrupted defense team's time preparing for trial, because as of the filing
    of the motion, that issue has not resulted in delay of trial. The Court notes, however, that
22  the notice has subsequently resulted in a roughly six-week continuance of trial to allow
    for the adjudication of Defendant's motion to strike. (ECF No. 381.) It bears emphasis that
23  the Court's finding that the reason-for-delay factor weighs towards the government here
    does not reach the issue of the government's actions during the capital case review
    process or the timing of the notice to seek death, particularly to the extent those issues
24  are raised in the pending motion to strike (ECF No. 374).

25      [14]At the Hearing, defense counsel acknowledges they primarily take issue with the
    year it took the government to supersede to add counts relating to J.S.'s death when the
26  government had sufficient information all along. Defense counsel concedes there are not
    many meaningful differences between the third and fourth superseding indictment, the
27  purpose of which was to address legal deficiencies pointed out in Defendant's motion to
    dismiss count 4. The Court further discusses the propriety of a fourth superseding
28  indictment in addressing the motion to dismiss count 4 below.

argues the government held on to materials in its possession for a lengthy period, as much as a year, before producing the majority of materials between January and March, and that materials produced contained a significant number of duplicates, which require the defense team to essentially waste time sifting through repeated documents. Regarding the timing of production, defense counsel represents that a total of four terabytes of discovery has been produced to date, with three of those terabytes produced in since January of this year. In response, the government acknowledges that duplicative materials were produced but maintains that the materials recently produced were voluminous due primarily to supporting documentation for expert reports.[15] The government represents that they made at least one discovery production every month since February 2024, including eight productions in January 2025 which contained extractions or attempted extractions from 18 devices. (ECF No. 320 at 14-15.) They reiterated steps they have taken to prioritize production of discovery materials, including changing staffing to dedicate a legal assistant assigned to work on this case and procuring additional equipment to process discovery for production. (*Id.* at 17.)

The Court agrees with Defendant that the chaotic disclosure of significant discovery close to trial is concerning, particularly to the extent it puts Spurlock in a Catch 22 position: defense counsel may effectively face a choice between advocating for Defendant's speedy trial rights and being prepared for trial, while in the meantime the government is positioned to disclaim responsibility. In addition, the Court does not give undue deference to the government's assurances that it has simply been trying its best to provide discovery—and to "produce discovery when it is ready to be produced." Although a relatively "neutral reason [for delay] such as overcrowded courts should be weighted less heavily" than a deliberate attempt to delay trial, it "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the

---

[15]Government counsel also contends these materials are exculpatory, so there was no need for defense counsel to have more time to do a further "deep dive." Defense counsel of course disagreed, contending they need time to further investigate exculpatory evidence.

government rather than the defendant." *Barker*, 407 U.S. at 531. Ultimately, however, the Court does not find that the government's handling of the discovery process has been the reason for the continuances of the trial dates up to April 22, 2025, discussed in the instant motion.

As for the third factor, Defendant has asserted his right to speedy trial. While the Court gives "strong evidentiary weight" to Spurlock's assertions of his rights to a speedy trial, his assertions must also "be viewed in the light of [his] other conduct." *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). *See also Barker*, 407 U.S. at 534 (finding the fact that the defendant "did not want a speedy trial" to be the most important factor counterbalancing the 5-year delay). Spurlock objected to every continuance, including the first continuance of the July 2023 date, even when it was clear his attorneys could not effectively represent him given the status and posture of the case. As to each continuance, Spurlock's counsel emphasized Spurlock's objection to delaying trial and his understandable frustrations with the delay given his pretrial detention. But they also vocalized that the defense team was not ready for trial. (ECF Nos. 47 (first continuance of trial over Defendant's objection); 132 at 13 (Spurlock's counsel acknowledging the need to continue the February 2024 trial date to the end of the year knowing "Mr. Spurlock will not be happy, personally with us proposing" a continuance "but we think the Sixth Amendment requires us to have enough tie to provide the government with reasons why the Attorney General should decide not to seek the death penalty"); 183 at 6 (Spurlock's counsel representing his objection to a continuance but stating that counsel believes a continuance of the November 2024 trial date is needed "especially in light of the discovery that we have and still have not yet reviewed.").) This led the Court to continue trial, excluding the time under the Speedy Trial Act. (ECF Nos. 47, 97, 150.) But given Spurlock's consistent and persistent assertions of his rights, the Court finds this factor to weigh slightly in Defendant's favor.

Finally, as to the fourth factor, the harm from delay can take the form of "oppressive pretrial incarceration" and the prolongation of the "anxiety and concern" of the accused in

addition to "the possibility that the defense will be impaired." *Barker*, 407 U.S. at 531. Here, prejudice to Defendant stems primarily from his pretrial detention and the "anxiety and concern" he faced during that period, as well as during the period of pretrial incarceration in the state case. (ECF No. 253 at 27-28.) That Defendant suffers prejudice is obvious given that he has been held in pretrial custody and charged with offenses involving three killings, including death-eligible offenses.[16] So, this factor favors Defendant.

Carefully weighing the four factors in the difficult and sensitive post-indictment delay analysis, the Court ultimately finds they do not support the "severe" remedy of dismissal of the case in its entirety. *See Barker*, 407 U.S. at 523 n. 16 (quoting United States v. Ewell, 383 U.S. 116, 121 86 (1966)) (noting that "overzealous application of this remedy" could infringe on the societal interest). While Defendant has suffered prejudice as a result of being held in pretrial detention during the two-year period from the time of indictment to the present, and has objected to every continuance of trial, the Court finds that the length of the delay and the reasons for the delay do not warrant dismissal, given the drastic nature of the remedy.

### B.    Motion to Dismiss Count 4 (ECF No. 243)

Defendant moves to dismiss count 4, which charges him with tampering with a witness by killing in violation of 18 U.S.C. § 1512(a)(1)(C) (ECF No. 160 at 4). (ECF No. 243.[17]) Defendant also requests grand jury records related to count 4. (*Id*.) The government added count 4 as an attempt to properly join claims when it filed the third superseding indictment in September 2024, after the Court issued its order severing the set of counts related to the alleged killing of J.S. while engaged in marijuana trafficking

---

[16]The Court reiterates that for purposes of addressing this motion, it does not consider Defendant's argument about prejudice relating to the government's decision to reexamine the no-seek decision because that process did not result in the continuances of trial to April 22, 2025, the delay raised in the motion.

[17]The government responded (ECF No. 303 (sealed)) and Defendant replied (ECF No. 329 (sealed)).

from the set of counts involving the alleged killing of W.L. and Y.L. (ECF Nos. 127, 146 (severing counts), 160.) As charged in the third superseding indictment, count 4 alleges that Defendant killed W.L. to prevent him from communicating information to law enforcement about the killing of J.S. (ECF No. 160.)

In his motion to dismiss count 4, filed on March 12, 2025, Defendant argues that the government fails to allege an essential element of 18 U.S.C. § 1512(a)(1)(C) in the then-operative third superseding indictment because the statute requires a killing "motivated by the intent to prevent communication with *federal* law enforcement" and no allegations suggest that Defendant sought to prevent W.L. from contacting federal rather than local officials. (ECF No. 243 at 2-3.) Defendant further argues that the government cannot cure the deficiencies in the third superseding indictment and should not be permitted to attempt to supersede again. (*Id.* at 12.) The government responded on March 27, 2025, declining to "concede that it failed to allege an essential element of the crime by omitting one word, 'federal,' from the indictment" but nevertheless indicating that it would seek permission from the grand jury to supersede an additional time.[18] (ECF No. 303 at 1-2.) Defendant replied on April 2, 2025, and again objected to the government's stated plan to supersede. (ECF No. 329.) The following day, the government filed the fourth superseding indictment, which is identical to the third superseding indictment except for the one-word addition that count 4 pertains to a "federal" law enforcement officer. (ECF No. 342 at 4.)

Given that the government's fourth superseding indictment moots some of Defendant's arguments, to the extent it is appropriately filed, the Court will begin its analysis by considering whether the government properly superseded, and if so, whether count 4 is now legally sufficient as charged. The Court will assume, without deciding, that 18 U.S.C. § 1512(a)(1)(C) indeed requires the government to prove intent to prevent

communication with a *federal* law enforcement officer, and that the third superseding indictment was legally deficient because it omitted the word "federal." *See United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (requiring dismissal where an indictment fails to recite an essential element of a charged offense); *Fowler v. United States*, 563 U.S. 668, 675-78 (2011) (addressing the plain language of 18 U.S.C. § 1512(a)(1)(C) and holding that "where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely . . . at least one of the relevant communications would have been made to a federal officer") (emphasis in original).

Defendant argues (1) the government cannot cure the deficiency in the third superseding indictment because there is no factual predicate for count 4, so no reasonable grand juror could find probable cause even where the language of the indictment has been amended to include the word "federal"; and (2) even if the government has a factual basis for seeking to correct the third amended indictment, it should be precluded from doing so. (ECF No. 243 at 11-12.) The Court finds both arguments unpersuasive.

As for his first argument, Defendant focuses on a purported lack of factual evidence produced to the defense going to Defendant's alleged involvement in the death of W.L. with the intent of silencing him, as well as a lack of evidence suggesting with "reasonable likelihood" that W.L. would have spoken to federal law enforcement. (*Id.*) But "[i]t has been repeatedly stated and well established that an indictment cannot be attacked on the ground that evidence before the grand jury was incompetent or inadequate." *Reyes v. United States*, 417 F.2d 916, 919 (9th Cir. 1969) (finding a defendant's argument that a grand jury had insufficient evidence to indict without relying on an improper presumption to be without merit); *Costello v. United States*, 350 U.S. 359, 363 (1955) ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial on the merits . . . ."). *See also United States*

*v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982) (addressing erroneous grand jury instructions). Defendant may, of course, challenge the sufficiency of the evidence in a Rule 29 motion—and indeed, Defendant cites to cases addressing the sufficiency of the evidence at that stage[19]—but such an argument is premature here. The grand jury—not the Court—is tasked with the initial evaluation of the strength of evidence. *See United States v. Navarro-Vargas*, 408 F.3d 1184, 1201 (9th Cir. 2005) (finding grand jury decision unreviewable). And Defendant effectively acknowledges that there is at least *some* evidence going to the nexus between Defendant, J.S., and W.L., as relevant to count 4, even as Defendant maintains that this evidence is weak.[20] (*See* ECF No. 243 at 11-12 (describing as the "sole piece of evidence relevant to this count" an interview between W.L. and a private investigator hired by J.S.'s mother, in which W.L. indicated that he thought Defendant could be involved in J.S.'s death).) Defendant's arguments as to the inadmissibility of hearsay evidence are inapposite. *See e.g.*, *Costello*, 350 U.S. at 363 (finding no ground to challenge grand jury proceedings on the basis that evidence presented was largely hearsay). The Court thus finds no basis to conclude that the indictment could not be cured as to count 4 because of deficiencies in factual support.[21]

---

[19]*See, e.g.*, *United States v. Johnson*, 874 F.3d 1078 (9th Cir. 2017) (addressing the "reasonable likelihood" standard under *Fowler* on a Rule 29 motion for judgment of acquittal).



*(fn. cont...)*

As for his second argument, Defendant asserts that the Court should decline to permit the government to proceed on a fourth superseding indictment regardless of any determination on probable cause and grand jury instructions because the government "has yet to present a properly joined indictment" and the government "cannot now, on the eve of trial, attempt a fifth indictment hoping it can finally properly join counts that simply belong in two cases." (ECF Nos. 243 at 12, 329 at 3.) Here, Defendant relies primarily on the Sixth Amendment speedy trial right, as it has been applied in the context of superseding indictments. *See, e.g., United States v. Cutting*, Case No. 14-CR-00139-SI-1, 2017 WL 66837, at *6 (N.D. Cal. Jan. 6, 2017) (citing *Barker*, 407 U.S. at 530 (providing the previously-discussed six-factor test for post-indictment delay)). As a general matter, the government's discretion to supersede before trial is broad. *See U.S. v. Goodwin*, 457 U.S. 368, 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct."). And while Defendant points to the Court's countervailing inherent supervisory power to protect against prosecutorial misconduct (ECF No. 329 at 2-3), the Court is unpersuaded that the government overstepped its broad discretion in superseding to properly charge count 4 at the time it did such that the Court's intervention is appropriate.[22] *See United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir. 1977).

Importantly, while the one-word addition to the Fourth Superseding Indictment may have significant implications and for the issue of severance, the change at issue is ultimately corrective; superseding does not "significantly expand[] the scope of the case." *Cutting*, 2017 WL 66837, at *9 (granting a motion to dismiss a superseding indictment

[black redaction box]

---

[22]The Court does not address the government's discretion to submit a fifth superseding indictment, as that question is beyond the scope of this motion.

which *widely expanded* the scope of the allegations and added charges after significant delay). The issue of this charge and its impact on other counts and severance has been generally known and contested by the parties. Repeated indictments which attempt to join claims and cure deficiencies cause delay, which the Court takes seriously and weighs in evaluating Defendant's delay-related arguments (*see* ECF No. 263 (motion to dismiss for government delay)). Nevertheless, because the Court declines to encroach on the government's discretion under the circumstances, the Court denies Defendant's motion to dismiss count 4.

The Court further denies Defendant's additional request for grand jury transcripts pertaining to count 4. (ECF No. 243 at 14-15.)  A defendant seeking disclosure of a grand jury record must demonstrate a "particularized need" for that record by satisfying a three-part standard: (1) the material sought is "needed to avoid a possible injustice in another judicial proceeding," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only materials so needed." *Douglas Oil Co. of Cal. v. Petrol Stops of Northwest*, 441 U.S. 211, 222-3 (1979). *See also United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (applying this three-part standard); *United States v. John Doe, Inc. I*, 481 U.S. 102, 112 (1987) (noting standard is "a highly flexible one, adaptable to different circumstances"). Under Fed. R. Crim. P. 6(e)(3)(E), "[t]he court may authorize disclosure . . . of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." But "[m]ere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the particular need required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (internal citations omitted). *See also Wright*, 667 F.2d at 796 (finding "erroneous grand jury instructions" insufficient for dismissal where there was no deception by the prosecuting attorney).

Here, Defendant speculates that the grand jury indicted with less than probable cause, necessitating the grand jury record to support a possible ground for dismissal

under Fed. R. Crim. P. 6(e)(3)(E). But given that the government has now superseded the third amended indictment, transcripts of related grand jury proceedings are not relevant. To the extent Defendant intends for the request to apply to transcripts related to the fourth superseding indictment, there is no particularized reason to suspect that disclosure could provide grounds for dismissal or meet the other requirements for disclosure.[23] *See Douglas Oil Co.*, 441 U.S. at 222-23. *See also Ferreboeuf*, 632 F.2d at 835 (speculative assertions of improprieties are not enough). Defendant also argues that "instructional errors before the grand jury, intentional or unintentional, warrant dismissal." But the cases Spurlock cites for support generally involve prosecutorial misconduct, or circumstances strongly suggesting that the jury was misled in a significant way causing actual prejudice. *See, e.g.*, *United States v. Peralta*, 763 F. Supp. 14, 18-19 (S.D.N.Y. 1991) (finding constructive possession instruction given to the grand jury "seriously misstated the applicable law" after testimony from primary witness in front of grand jury was inconsistent with his own later testimony at trial, when government relied on constructive possession theory throughout trial); *United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011) (dismissing indictment without prejudice where grand jury was improperly instructed on an affirmative defense which also "went to the heart of the intent required to indict" causing actual prejudice). In the instant case, by contrast, the Court cannot conclude that the government precipitated a "deliberate introduction of perjured testimony" or "other prosecutorial behavior, even if unintentional, [which] can also cause improper influence and usurpation of the grand jury's role." *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) (dismissing an indictment based on serious prosecutorial misconduct in presenting irrelevant prejudicial material to a grand jury, and expressly distinguishing this circumstance from challenges based on the sufficiency of the evidence).

1  In sum, the Court denies the motion to dismiss count 4 and the request for jury

2  transcripts as to this count.

3  **C.    Motion to Dismiss Counts 7-8 (ECF No. 255)**

4  The Court next addresses Defendant's motion to dismiss counts 7 and 8 for lack

5  of probable cause and lack of federal jurisdiction. (ECF No. 255.[24]) Defendant also

6  argues, in the alternative, that the Court should require disclosure of the grand jury record

7  related to count 7. (*Id.* at 2.)

8  Count 7—which serves as a predicate offense for count 8—charges Spurlock with

9  interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951.

10  (ECF No. 160.) The indictment alleges that on or around November 8, 2020, Defendant

11  "did unlawfully obstruct, delay and affect commerce" by "unlawfully tak[ing] and obtain[ing]

12  currency from the person and in the presence of W.L., a marijuana trafficker, against the

13  will of W.L. and by means of actual and threatened force, physical violence, and fear of

14  injury . . . to the person of W.L." (*Id.* at 5-6.) Count 8 charges Defendant with causing

15  death through use of a firearm in relation to a crime of violence (the crime alleged in count

16  7), in violation of 18 U.S.C. §§ 924(c) and 924(j)(1). (*Id.* at 6.)

17  Defendant argues that dismissal of count 7 is appropriate because "no admissible

18  evidence has been produced to the defense to support either the factual 'unlawful taking'

19  or the jurisdictional interstate commerce element of [the Hobbs Act charge]," also making

20  count 8 deficient as charged. (ECF No. 255 at 2.) Spurlock acknowledges that a claim of

21  insufficient evidence to support probable cause in grand jury proceedings is not grounds

22  for dismissal, *see Navarro-Vargas*, 408 F. 3d at 1200. He maintains, however, that the

23  context here is unique because the alleged theft of currency needed to support a Hobbs

24  Act robbery charge is also necessary to meet the requirement that the robbery "affected

25  commerce," *see* 18 U.S.C. § 1951(a). (ECF No. 255 at 2.) The government argues that

26  despite his contentions to the contrary, Defendant's challenge to count 7 is largely a

27

28  _____

[24]The government responded (ECF No. 299) and Defendant replied (ECF No. 335).

dispute regarding sufficiency of the evidence, and dismissal at this stage would encroach on the role of the grand jury. (ECF No. 299.) The Court agrees with the government. Defendant essentially asks the Court to inappropriately parse through grand jury evidence, considering its validity and questioning the reasonableness of any inferences made by the jurors.[25] *See Reyes*, 417 F.2d at 919.

Moreover, even if the Court considers the substance of Spurlock's argument regarding factual infirmities, Defendant's focus on the lack of *admissible* evidence is once again misplaced. *See e.g.*, *Costello*, 350 U.S. at 363 (addressing hearsay in grand jury proceedings). And it is certainly not clear at this stage that "no evidence" supports the unlawful taking or jurisdictional elements – particularly in light of the *de minimis* threshold applicable to the interstate commerce element of a Hobbs Act charge and the discovery evidence in this case related to marijuana distribution. *See United States v. Rodriguez*, 360 F.3d 949, 955 (9th Cir. 2004) ("It is well-established that the government need only show a *de minimis* effect on interstate commerce [to support a Hobbs Act charge]."). *See also Taylor v. United States*, 579 U.S. 301, 308 (2016) ("[I]f the Government proves beyond a reasonable doubt that a robber targeted a marijuana dealer's drugs or illegal proceeds, the Government has proved beyond a reasonable doubt that commerce over which the United States has jurisdiction was affected.").

Defendant further argues that at minimum, the government should be required to disclose all grand jury transcripts and exhibits pertaining to count 7, especially because of its outsized influence on count 8. With respect to the first disclosure factor set out in *Douglas Oil Co.*, 441 U.S. at 222-23, he again emphasizes that instructional errors in grand jury proceedings, even if unintentional, may warrant dismissal, pointing to the

---

[25]In his reply, Defendant argues the government's statement that "Defendant . . . stated that W.L. did not have any large amounts of money and that Defendant had taken $1,000 from W.L.'s wallet and gave $700 of it to B.K" is not supported by discovery. (ECF No. 335 at 2.) Defendant further argues that the government's "incorrect description of the allegation also calls into question whether the government inaccurately presented this evidence to the grand jury." (*Id.*) But again, the Court will not investigate the specific evidence presented to the grand jury, or the source/strength of that evidence, based on speculation about possible shortcomings.

1    "inaccurate characterization of the government's evidence on the supposed theft." (ECF

2    Nos. 255 at 3, 335 at 3). But as the Court has already noted, dismissal is a remedy which

3    is generally only appropriate in cases involving significant and non-speculative prejudice;

4    here, the possible introduction of inadmissible evidence – or the characterization of that

5    evidence when compared to discovery – does not rise to this level. *See, e.g.*, *Peralta*, 763

6    F. Supp. at 18-19; *Stevens*, 771 F. Supp. 2d at 568; *Samango*, 607 F.2d at 882. The

7    Court thus finds that Spurlock fails to demonstrate a particularized need for disclosure of

8    the remaining grand jury record as to count 7, when also bearing in mind the second and

9    third *Douglas Oil Co.* factors (the continuing interest in secrecy and the scope of the

10   request).

11       Accordingly, the Court denies the motion to dismiss counts 7 and 8 and further

12   denies the request for the grand jury record as to count 7.

13       **D.    Motion to Dismiss Count 2 (ECF No. 256)**

14       Defendant next moves to dismiss count 2, which charges him with the murder of

15   J.S. while engaged in narcotics trafficking, in violation of 21 U.S.C. § 848(e)(1)(A) (ECF

16   No. 160 at 2-3).[26] (ECF No. 256.[27]) He argues that dismissal is appropriate because (1)

17   count 2 alleges a violation of a penalty section that enhances the possible penalty of count

18   1, not a standalone offence, and (2) that the count lacks sufficient particularity to put

19   Spurlock on notice of the allegations against him. (*Id.*) In the alternative, Spurlock seeks

20   "a bill of particulars that adequately informs him of the allegation against him and the

21   factual basis for the government's theory of the case." (*Id.*)

22       The Court is not persuaded by Defendant's first argument—that 21 U.S.C. § 848

23   is a sentencing enhancement section applicable to offenses involving a continuing

24   _____

25   [26]Count 2 specifically alleges that Spurlock and others, while engaged in an
     offense punishable under Section 841(b)(1)(A) (conspiracy to possess with the intent to

26   distribute 1000 kilograms or more of a substance containing a detectible amount of
     marijuana as charged in count 1), aided and abetted one another to "knowingly and

27   intentionally kill and counsel, commend, procure and cause the intentional killing of J.S."
     on or about June 19, 2020. (*Id.*)

28       [27]The government responded (ECF No. 302) and Defendant replied (ECF No.
     336).

criminal enterprise or drug trafficking crime (here, a violation of 21 U.S.C. § 841(b)(1)(A)(vii) as charged in count 1), and that as a result, a violation of Section 848 cannot be charged as a standalone offense. (*Id.* at 2-3.) Here, Spurlock asserts that he "should not be separately charged and risk a sentence of ten years to life on Count 1 and a sentence of twenty years to life, and with the possibility of a death sentence, on Count 2" and that he "should not face the prejudice of going to trial on an indictment that appears to allege more offenses than it does, creating the impression of a larger criminal enterprise." (*Id.* at 3.) But Defendant provides limited support for this interpretation of the statute. As the parties both acknowledge, the Ninth Circuit has never directly addressed the question of whether Section 848(e) creates a standalone offense. (ECF No. 336 at 3.) Spurlock primarily points to the heading of the section (titled "Death Penalty") to suggest it authorizes only an additional penalty for a drug trafficking crime. (*Id.* at 3-4.) *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998). As the government notes, however, courts in this circuit and others have frequently—if implicitly—treated Section 848(e) as creating an independent offense in light of the statute's text in context. *See United States v. LaFleur*, 971 F.2d 200, 212 (9th Cir. 1991) (comparing murder charged under 21 U.S.C. § 848(e) to murder under 18 U.S.C. § 1111(b) and finding that Section 848(e) covers "persons who have various roles in a murder," covering a broad range of culpability and making sentencing discretion appropriate). *See also United States v. Villarreal*, 963 F.2d 725, 728 (5th Cir. 1992) (finding that an offense could be charged under Section 848(e)(1)(B) because the statute created a substantive violation); *United States v. NJB*, 104 F.3d 630, 634 (4th Cir. 1997). The Court thus declines to dismiss Count 2 as an improperly charged offense under a penalty statute.[28]

The Court is also unconvinced by Defendant's second argument—that count 2 lacks the particularity necessary to allow him to effectively prepare his defense. (ECF No.

---

[28]The Court does not consider, in addressing the dismissal motion at issue, whether the conspiracy charged in count 1 is a lesser included offense of the violation charged in count 2. *See Rutledge v. United States*, 517 U.S. 292 (1996); *Garrett v. United States*, 471 U.S. 773 (1985).

256 at 3-4.) Defendant asserts that "many, alternative forms of conduct alleged in the indictment render the charging document impermissibly vague, violating Mr. Spurlock's due process rights." (*Id.* at 3.) *See* Fed. R. Crim. P. 7(c)(1) (requiring a "plain, concise, and definite written statement of the essential facts constituting the offense charged"); *United States v. Huping Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012) (requiring an indictment to meet due process requirements as well as the requirements of Rule 7). In general, a charging instrument must "(1) contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against him which he must defend and (2) enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010). The charging instrument must do more than merely replicate statutory language – it must articulate facts regarding the conduct at issue. *See Hamling v. United States*, 418 U.S. 87, 117-18 (1974). The Court finds that as charged, count 2 meets these requirements. The count adequately alleges that (1) while engaging in a conspiracy to possess with the intent to distribute and to distribute 1000 kilograms or more of a substance containing marijuana as charged in count 1 (naming W.L., J.S., and O.O.), (2) Defendant and others aided and abetted one another to (3) knowingly and intentionally cause the killing of J.S. on June 19, 2020. (ECF No. 160 at 2-3.)

Relatedly, the Court declines Defendant's request for a bill of particulars. *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983), *citing United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.), *cert. denied*, 444 U.S. 979 (1979) ("In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government.") Of course, the government may not use a vague indictment as a cover for impermissibly changing theories partway through the case. *See id.* But the Court agrees with the government that, considering the indictment and the discovery provided—as well as the relevant facts laid out in other disclosures and the response to the dismissal motion regarding the death of J.S.—Defendant has

1   adequate information to be on notice about the charges against him and to prepare a
2   defense. While Defendant argues that a bill of particulars is necessary because the
3   government could proceed under multiple vague and circumstantial theories, including
4   about the person who actually killed J.S., the government has stated it "is not alleging,
5   nor does the discovery provided to Spurlock support, that another person aided Spurlock
6   in the actual killing of J.S., that Spurlock ordered another person to kill J.S., or that another
7   person ordered Spurlock to kill J.S." (ECF No. 302 at 6.)

8       The Court thus denies Defendant's motion to dismiss count 2 and the request for
9   a bill of particulars.

10      **E.    Motion to Dismiss Count 3 (ECF No. 259 (sealed))**

11      Defendant also moves to dismiss count 3, which charges him with murder-for-hire
12  conspiracy in violation of 18 U.S.C. § 1958(a) (ECF No. 160 at 3-4). (ECF No. 259
13  (sealed)[29].) Count 3 alleges that between October 2020 and March 2021, "[Defendant],
14  promised B.K. payment for assistance in killing W.L. and [Defendant] and B.K. conspired
15  and agreed to kill W.L.," resulting in W.L.'s death in November 2020. (ECF No. 160 at 3-
16  4.) Spurlock argues that count 3 is insufficiently pled and must be dismissed in light of
17  legal requirements under 18 U.S.C. § 1958(a) because the government (1) fails to allege
18  a clear meeting of the minds as to what consideration was exchanged for the murder and
19  (2) fails to allege more than speculative and hypothetical consideration. (ECF No. 259 at
20  6.) Relatedly, Defendant argues that the existing factual evidence is legally insufficient to
21  provide the requisite particularity for the charge. (*Id.*)

22      In general, 18 U.S.C. § 1958(a) "proscribes a very limited category of behavior"
23  and, as Defendant notes, requires the government to prove a legally-adequate mutual
24  agreement and exchange of consideration. *See United States v. Frampton*, 382 F.3d 213,
25  217-18 (2d Cir. 2004) ("[O]nly those instances in which one party agrees to commit a
26  murder in exchange for another party's provision (or future promise) of payment are

27

28      [29]The government responded (ECF No. 300 (sealed)) and Defendant replied (ECF
No. 337 (sealed)).

punishable under § 1958."); *United States v. Phillips*, 929 F.3d 1120, 1124 (9th Cir. 2019) (requiring "a clear mutual agreement between the solicitor and hitman of payment in exchange for murder"); *United States v. Chong*, 419 F.3d 1076, 1082 (9th Cir. 2005) (noting the mutual exchange must be "clearly understood" to involve "something of pecuniary value"); *United States v. Ritter*, 989 F.2d 318, 321-22 (9th Cir. 1998) (finding inadequate speculative or hypothetical consideration).

Here, the operative indictment adequately addresses the elements of the offense on its face and despite Defendant's arguments to the contrary, the indictment is adequate with regard to the mutual agreement and consideration requirements. Defendant is charged with conspiring with B.K. and another individual to "use and cause another to use a facility of interstate commerce, with intent that a murder be committed . . . as consideration for the receipt of, and as consideration for a promise and agreement to pay a *thing of pecuniary value*." (ECF No. 160 at 3-4 (emphasis added).) The indictment further specifies that Defendant "promised B.K. payment for assistance in killing W.L. and [Defendant] and B.K. conspired and agreed to kill W.L." (*Id.*) The Court finds that this is enough. Defendant argues that the reference to a "thing of pecuniary value" must be further particularized and the same goes for an expectation of proceeds. (ECF No. 259 at 6.) But whether the killing was in fact motivated by the hope for financial gain and whether this pecuniary value was sufficiently meaningful to support a conviction under 18 U.S.C. § 1958(a) are questions which involve factual determinations.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ Other cases Defendant cites for support here are also both procedurally and factually distinguishable, to the extent they involve deficiencies in evidence when reviewed in the light most favorable to the government at the end of trial or on appeal. *See, e.g.*, *Chong*, 419 F.3d at 1082 (reversing conviction because "[t]he jury did not have sufficient evidence from which to find that the $100 constituted compensation for the murder-for-hire, given the absence of any overt agreement or understanding between [Defendant and co-conspirators]").

Finally, Defendant argues that the Court should require disclosure of the grand jury transcripts related to count 3. (ECF No. 259 at 6-10.) ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ But for the same central reasons the Court has already discussed, the Court finds that Defendant does not show a particularized need for the records, given the basis for his request goes to the sufficiency of the evidence, and considering the relevant factors under *Douglas Oil Co*.

The Court thus denies the motion to dismiss count 3 and the request for grand jury transcripts related to this count.

### F.    Renewed Motion to Sever (ECF No. 244)

Defendant asks the Court to reinstate its previous order severing two groups of counts (ECF No. 146) upon dismissal of count 4, which, as the Court has discussed, is an attempt by the government to link the J.S. murder with the murders of W.L. and Y.L.[30]

---

[30]The Court previously granted Defendant's motion to sever counts 1 and 2 from counts 3 through 7 of the second superseding indictment, finding the groups of counts were improperly joined under Rule 8(a). (ECF No. 146.) As discussed, the government then obtained a third superseding indictment, adding a new charge in count 4 for tampering with a witness by killing of W.L. (ECF No. 160.)

1   (ECF No. 244.) Defendant originally argued that, assuming the Court will dismiss count

2   4, the Court should reinstate its severance order. In response, the government indicated

3   it would seek the fourth superseding indictment to correct the legal deficiencies identified

4   in Defendant's motion to dismiss count 4. (ECF No. 301.) In his reply, Defendant argues

5   for the first time that severance is still required even if the Court denies dismissal of count

6   4. (ECF No. 330 at 3-5.) The Court has now denied dismissal of count 4, and Defendant

7   cannot raise an entirely new severance argument in his reply. Accordingly, the Court

8   denies Defendant's renewed motion to sever.

9          Even if the Court were to consider Defendant's new severance argument, the

10  Court nevertheless finds that Defendant's assertion of prejudice—the need to avoid a

11  mistrial if the Court were to grant a Rule 29 motion during the trial due to spillover

12  evidence (ECF No. 330 at 3-5)—does not support severance. Rule 14 permits the Court

13  to order separate trials or "provide any other relief that justice requires" if joinder "appears

14  to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The rule "does not

15  require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to

16  be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506

17  U.S. 534, 538-39 (1993). And "Rule 14 sets a high standard for a showing of prejudice."

18  *United States v. Vasquez-Velasco,* 15 F.3d 833, 846 (9th Cir. 1994).

19         Here, given that the Court has declined to dismiss count 4, the Court agrees with

20  the government that the counts all share a common scheme with overlapping evidence

21  such that severance is unwarranted. Count 4 charges Defendant with tampering with a

22  witness by the killing of W.L., to prevent communication by W.L. to a federal law

23  enforcement officer about the alleged killing of J.S. (ECF No. 342 at 4.) Count 4 thus

24  properly links the two group of offenses—conspiracy to distribute marijuana and the

25  murder of an individual (J.S.) while engaging in narcotics trafficking (counts 1 and 2) with

26  the killings of W.L. and Y.L (counts 3 and 5 through 8). Defendant's prejudice argument

27  is unpersuasive; limiting jury instructions may cure any "spillover" evidence and render

28  such evidence non-prejudicial, even where the case may be complex. *See United States*

*v. Johnson*, 297 F.3d at 856-60 (affirming trial court's decisions to deny severance requests and finding that any "spillover" evidence was sufficiently addressed through limiting jury instructions during the lengthy and complex trials). Here, the jury will be given proper instructions as to the elements of each count to help them consider each charge separately. Indeed, "juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540 (quoting *Richardson v. Marsh,* 481 U.S. 200, 211 (1987)).

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to dismiss indictment for government delay (ECF Nos. 253 (sealed), 263) is denied.

It is further ordered that Defendant's motion to dismiss count 4 (ECF No. 243) is denied.

It is further ordered that Defendant's motion to dismiss counts 7 and 8 (ECF No. 255) is denied.

It is further ordered that Defendant's motion to dismiss count 2 (ECF No. 256) is denied.

It is further ordered that Defendant's motion to dismiss count 3 (ECF No. 259) is denied.

It is further ordered that Defendant's renewed motion to sever (ECF No. 244) is denied.

DATED THIS 18th Day of April 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE