UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>　v.<br>CORY SPURLOCK,<br>　　　　　　Defendant. | Case No. 3:23-cr-00022-MMD-CLB-1<br><br>ORDER |

I.　**SUMMARY**

This order addresses four fully briefed pretrial motions relating to pretrial disclosure of inculpatory evidence and expert witnesses (ECF Nos. 287, 321, 322, 323).[1]

II.　**DISCUSSION**

　　A.　**Motion for Pretrial Disclosure (ECF No. 287)[2]**

Defendant asks the Court to "require the government to disclose to the defense prior to trial all known inculpatory evidence that is likely to be revealed during trial." (ECF No. 287 at 2.) The government responds that the request is too broad and is beyond the government's disclosure obligations under *Brady/Giglio*, the Jencks Act, and Fed. R. Crim. P. 16. (ECF No. 359 at 2.)

The government cannot avoid its disclosure obligation by intentionally not reducing inculpatory statements to writing or by selectively recording certain statements while omitting others, as Defendant notes in citing to a previous case before this Court. *See United States v. Burciaga,* No. 3:20-cr-00060-MMD-CLB (ECF No. 244 at 4) (finding that while the government "is technically correct [that it had no duty to disclose oral inculpatory

---

[1]The Court resolves these pretrial motions to the extent they are not impacted by Defendant's motion to strike (ECF No. 374), which is not yet fully briefed.

[2]The government filed a response (ECF No. 359) and Defendant filed a reply (ECF No. 382).

statements under Rule 16], the involved prosecutors' [who are also the prosecutors in this case] decision to intentionally not take note of this material evidence is concerning, particularly when viewed in the context of this case."). In *Burciaga,* while the Court denied the defendant's motion for a new trial, the Court concluded that the government "chose to withhold a material piece of evidence" by intentionally not reducing oral statements to writing.[3] *Id.* at 7-8.

That said, the Court agrees with the government that Defendant's request is too broad. As the government points out, "Spurlock's proposed order would in practical effect obligate the government to document verbatim every interaction it had with a witness and to produce that documentation to the defense." (ECF No. 359 at 2-3.) However, to ensure trial proceeds in an orderly manner without the need for the Court to resolve, at an unnecessarily broad level, whether the government intentionally avoided its disclosure obligation by not reducing oral inculpatory statements to writing, the Court will exercise its inherent authority to manage its docket and the trial to direct the government to disclose inculpatory statements, whether oral or written, to Defendant by 8:30 a.m. the day before the witness is scheduled to testify. *See United States v. W.R.* Grace, 526 F.3d 499, 509-513 (9th Cir. 2008) (affirming district court's authority to order and enforce order requiring the government to disclose final lists of proposed trial witnesses under the court's inherent authority to manage its docket). The Court will resolve any dispute regarding such disclosures after the daily recess of trial.

The Court thus grants Defendant's motion for pretrial disclosure (ECF No. 287) in part as discussed herein.

///

---

[3]The Court's order regarding pretrial procedure in criminal cases was recently modified to include a provision encouraging the government "to produce to the defendant in a timely and continuing manner all information or evidence, whether written or oral, that may be relevant to or suggestive of culpability, guilt, and punishment." *See e.g.*, *United States v. Baehr*, No. 3:25-cr-00002-MMD-CSD (ECF No. 10 at 2). The order regarding pretrial procedure in effect at the time this case was initiated did not contain this provision.

**B.  Motion to Strike Regarding Proposed Drug Trafficking Experts (ECF No. 321)[4]**

Defendant seeks to strike the notices of two expert witnesses who the government has designated to opine on drug trafficking. (ECF No. 321.) While the motion addresses two notices[5], the government clarified its intent to call only one of the two expert witnesses on this issue. (ECF No. 242 at 7 n. 6.) Thus, the motion essentially challenges the government's ability to offer the expert testimony of SA Gentile. Defendant asserts the following reasons for striking the testimony: (1) the notice fails to comply with Fed. R. Crim. P. 16(a)(1)(G)'s disclosure requirement; (2) the expert fails to survive a Fed. R. Evid. 702 challenge; and (3) the testimony should be excluded under Fed. R. Evid. 403. The Court will address these arguments and will grant the request to voir dire SA Gentile.

**1.  Rule 16(a)(1)(G) Disclosure**

Fed. R. Crim. P.16(a)(1)(G) provides that expert witness disclosures must contain: "a complete statement of all opinions"; "the bases and reasons for them"; "the witness's qualifications"; and "a list of all other cases" in which witness testified during the last four years. Defendant contends the notice here offers "categories within which opinions may be offered" but not the actual opinions, such that Defendant cannot discern what the witness will opine about. (ECF No. 321 at 4.) Defendant highlights category (h) in the notice—which relates to the witness's "review of the photos and documents associated with the W.L. drug trafficking organization" (ECF No. 220 at 2)—as an example. (*Id.* at 4-5.) The government responds that it has supplemented the notice (ECF No. 368), though it does not concede the original notice was deficient. (ECF No. 367 at 3.)

---

[4]The government responded (ECF No 367) and Defendant filed a reply (ECF No. 387) and a corrected reply (ECF No. 391). The Court finds compelling reasons exist to seal Exhibit A to Defendant's reply and will grant the accompanying motion to seal (ECF No. 388).

[5]The government noticed DEA Task Force Officer Raymond Padilla (ECF No. 219) and DEA Special Agent Joseph Gentile (ECF No. 220). The government confirmed in its response that it will not be calling SA Padilla. (ECF No. 367 at 4 n. 3.)

3

The Court agrees with Defendant that the initial notice was deficient, because it contains overbroad categories or subject areas without stating the witness's anticipated opinions within those categories. However, the Court finds the supplemental notice sufficiently discloses the expert's opinions and the bases for them. (*Compare, e.g.*, ECF No. 220 (stating witness's testimony will include, in category (a), "drug trafficking structures and organizations"), *with* ECF No. 368 (stating this category will cover "1. An overview of the scope and nature of the marijuana trafficking conspiracy in this case, as summarized in the report authored by DEA SA Kathryn Wilkinson"; "2. Explanations as to how marijuana is commonly shipped, packaged, stored, and transported as well as how proceeds are received, as it relates to this drug trafficking organization and conspiracy"); ECF No. 220 (stating category (h) will include "review of the photos and documents associated with the W.L. drug trafficking organization"), *with* ECF No. 368 (stating this category will cover "4. Identification of substances in the photographs as marijuana based on his training and experience").)

As for the bases for SA Gentile's opinions, Defendant argues that while the supplemental notice references reliance on SA Wilkinson's report, "[i]t is still unknown to the defense which of the thousands of pages of the materials SA Gentile reviewed and is relying on." (ECF No. 391.) The supplemental notice generally states that SA Gentile relies on his "training and experience," SA Wilkinson's report, and "his review of the evidence items referenced in the report, such as photographs, notes, ledgers, phone data, and shipping labels (all previously produced in discovery)." (ECF No 368 at 2.) The reference to Wilkinson's report narrows the items of evidence upon which SA Gentile relies from the undoubtedly voluminous materials produced in discovery and does not support striking the notice. To the extent the particular items of evidence at issue are not clear from the supplemental notice and SA Wilkinson's report, the Court will permit inquiry into this issue during voir dire of SA Gentile.

### 2.  Rule 702

Defendant also contends that SA Gentile is not qualified, that his testimony is not relevant because it will not help the trier of fact understand the evidence, and that his testimony is not sufficiently reliable. (ECF No. 321 at 8-11.)

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that : (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The Supreme Court provided additional guidance on Rule 702 and its application in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Supreme Court held that scientific testimony must be reliable and relevant to be admissible. *See* 509 U.S. at 589. *Kumho Tire* clarified that *Daubert's* principles also apply to technical and specialized knowledge. *See* 526 U.S. at 141. The Ninth Circuit has further emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (citations and internal quotation marks omitted). The Advisory Committee Notes to the 2023 Amendments to Rule 702 remind the courts of their "gatekeeping function" to ensure the "expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Advisory Comm., Notes on 2023 Amendment to Fed. R. Evid. R. 702, note 2.

First, as to qualification, Defendant insists that SA Gentile is not qualified because "he has never testified, and he has never published" and the government's notice lacks

sufficient details about experience and training. (ECF Nos. 391 at 7, 321 at 8.) But qualification cannot be measured solely based on whether a witness has ever testified as an expert or has ever published. Fed. R. Evid. 702 provides that a witness may qualified based on their "knowledge, skill, experience, training, or education." And as the Ninth Circuit recently reiterated, the qualification generally "need only exceed the common knowledge of the average layman." *United States v. Holguin,* 51 F.4th 841, 854 (9th Cir. 2022) (quoting *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)). "Law enforcement professionals are routinely qualified to offer expert testimony based on their training and experience." *Id.*; *see also* Advisory Comm., Notes on 2000 Amendments to Fed. R. Evid. 702 ("To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").

As the government points out, SA Gentile's qualification is based on his "[e]xperience working drug investigations." (ECF No. 367 at 9.) His curriculum vitae describes his employment as a Special Agent with the United States Drug Enforcement Administration since May 2014, and he is assigned to a drug task force which focuses on "investigations of major drug trafficking organizations" and has "either investigated or assisted in the investigation of approximately two-hundred narcotics cases ranging in scope from street level distributors to multi-state and international complex conspiracy cases." (ECF No. 220-1 at 2-3.) His additional relevant experience includes approximately two years of experience "investigating narcotics" when he was worked with the Washington Metropolitan Police Department and was assigned to a VICE squad. (*Id.* at 2.) He also briefly describes the "specialized DEA training in narcotics investigation" and what that training covers. (*Id.*) Taking this background together, SA Gentile appears qualify through his training and experience to provide the proposed expert testimony as to the marijuana trafficking conspiracy charged in count one.

As to relevance, Ninth Circuit case law supports allowing government agents to testify about "the general practices of criminals to establish the defendants' modus

6

operandi." *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (affirming district court's decision to allow expert testimony that "drug traffickers often employ counter-surveillance driving techniques, register cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently use pagers and public telephones" and citing cases that similarly allow expert testimony as to drug trafficking). "Such evidence helps the jury understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *Id.* (quoting *United States v. Johnson,* 735 F.2d 1200, 1202 (9th Cir. 1984)). Defendant does not dispute well established case law allowing for such expert testimony, but he argues that the government has not demonstrated how SA Gentile's testimony will be helpful in this case. (ECF No. 391 at 7.) The Court disagrees.

Here, SA Gentile's proposed testimony could help the jury to understand the evidence that the government relies on to support count one—conspiracy to possess with intent to distribute and to distribute marijuana. As the government notes, the alleged conspiracy "involved thousands of pounds of marijuana" and "[m]any of the documents evidencing the conspiracy contain marijuana terminology, pricing structures, weights of the drugs, kinds of marijuana." (ECF No. 367 at 7.) The Court agrees with the government that the average juror would not be familiar with marijuana drug trafficking organizations, including for example, "how marijuana is common shipped, packaged, stored, and transported as well as how proceeds are received," or with marijuana terminology found in the documents that comprise the evidence in this case. (ECF Nos. 367 at 7, 368 at 2-3 (stating the expert testimony will cover "[e]xplanations of common nomenclature for marijuana products, as discussed in the report (snowman, animal face, gorilla cookie, etc."); and "[d]escriptions of the meaning of any and all slang and terminology used to describe the quantities and qualities of drugs involved in this conspiracy (flower,

gummies, shatter, units, etc.").)[6] Accordingly, the Court finds that SA Gentile's proposed testimony is relevant and would assist the jury in understanding the evidence.

Defendant insists that the government's response, indicating that it will rely on investigating officers to present evidence as to the alleged conspiracy and rely on SA Gentile to "fill the gaps," suggests that SA Gentile would be given a "carte blanche to opine at will about the essential elements of the offense, including . . . his impressions regarding culpability." (EF No. 391 at 8 (*citing* ECF No. 367 at 7).) But having an expert witness who can help the jury understand the evidence offered through percipient witness testimony and the other evidence in the case is permissible under Rule 702. *See e.g., United States v. Sepulveda-Barnaza,* 645 F.3d 166, 1072 (9th Cir. 2011) (affirming district court decision to admit expert testimony of Immigration and Customs Enforcement supervisory special agent opining on the value of the drugs at issue and "that drug trafficking organizations do not normally use unwitting couriers due to the value of the drugs involved," which goes to the gist of the defense); *Reed,* 575 F.3d at 922.

Finally, as to reliability, Defendant's challenge is premised on SA Gentile's opinion resting on his training and experience, not on "the basis of a standardized, scientific, or even identifiable methodology." (ECF No. 321 at 10.) The government counters that "expertise in illegal drug trafficking organizations does not involve the kind of technical, scientific studies and testing that some other areas of expertise may necessitate." (ECF No. 367 at 9.)

Reliability is "an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.' *Holguin,* 51 F.4th at 854 (quoting *Daubert*, 43 F.3d at 1316). The district court must make "explicit," "more than conclusory" findings of reliability, but "the inquiry need not be exhaustive". *Id.* at 853-55.

---

[6]The government acknowledges that certain drug trafficking terminology may not require expert testimony, citing to *United States v. Reed*, 575 F.3d 900, 922 (9th Cir. 2009). Whether expert testimony is needed to understand particular drug terminology is better resolved in the context of trial. But based on the information in the supplemental notice, terms such as "flower, gummies, shatter" appear to require expert testimony to explain their meaning in the context of marijuana distribution.

And in the context of expertise on drug activities, reliability "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)). Indeed, "[a] law enforcement expert can reliably testify about the structure and activities of criminal organizations based solely on experience." *Id.* at 856. The advisory committee notes to 2000 amendments to Rule 702 offer a helpful example illustrating the application of the reliability requirement to qualification based on technical or other specialized knowledge:

> For example, when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.

Advisory Comm., Notes on 2000 Amendments to Fed. R. Evid. 702.

Here, the government contends that the reliability of SA Gentile's opinion is grounded on his training and experience gained from his involvement in investigations of drug trafficking crimes. *See Gil*, 58 F.3d at 1422 ("[W]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.") (quoting *Johnson,* 735 F.2d at 1202) (internal quotation marks and citation omitted). While the supplemental notice and reference to SA Wilkinson's report provide notice that SA Gentile will testify as to indicia of marijuana trafficking, the Court cannot assess whether he provides sufficient explanation for how he interprets this evidence to assess the reliability of his inferences and opinions based on the information submitted. Given the anticipated length of the trial, to conserve judicial resource and out of respect for jurors' time, the Court finds it prudent to conduct a hearing to voir dire SA Gentile in order to determine reliability.[7] Accordingly, the Court grants Defendant's alternative request to voir dire SA Gentile pretrial.

---

[7]Defendant cites to *Holguin* to argue that the Court is required to make a reliability finding "before trial." (ECF No. 321 at 10.) *Holguin* reiterated that a *Daubert* hearing "is not required," but "cautioned" that "it will often be beneficial for district courts to conduct
*(fn. cont…)*

### 3. Rule 403

Defendant further asks the Court to consider whether SA Gentile's proposed testimony should be excluded under Rule 403 as unduly prejudicial. (ECF No. 321 at 11.) But the Court finds that it cannot resolve any Rule 403 objection without hearing the testimony and making a determination as to unfair prejudice in the context of trial.

### C. Motion to Strike Experts Notices on Electronic Devices and Vehicle Infotainment (ECF No. 322)[8]

Defendant contends the government's notices of expert testimony of eight witnesses (ECF Nos. 214, 215, 216, 217, 221, 224, 227, 228) should be stricken because the witnesses' proposed testimony—generally relating to how they ran a computer program to extract data from various electronic devices and vehicle "infotainment" system—is lay testimony. (ECF No. 322 at 2-3.) The government counters that they may not seek to qualify all of these witnesses as experts, but they noticed them "out of an abundance of caution" that they may offer testimony beyond explaining that they ran a computer program to extract data to include testimony as to "tools and concepts beyond the knowledge of an average juror." (ECF No. 369 at 5.)

There appears to be little disagreement that testimony about using Cellebrite software to extract data from a cell phone may be offered through a lay witness. Both parties cite *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1267 (9th Cir. 2024), where the Ninth Circuit found the district court did not abuse its discretion in allowing the government witness to testify about how he used Cellebrite software to extract and "parse" data from a cell phone into reports that included time-stamped GPS coordinates, and how he then entered those coordinates into Google maps to identify the cellphone's locations. *See also United States v. Ovies,* 783 Fed. Appx. 705. 707 (9th Cir. 2019) (finding district court did not abuse its authority by allowing an agent to testify about using

---

some proceeding, focused on the reliability of expert testimony, such as a *Daubert* hearing or voir dire of proffered expert testimony." 51 F.4th at 852-53.

[8]The government responded (ECF No. 369) and Defendant did not reply.

Cellebrite to extract data from a cell phone without qualifying the agent as an expert; the agent "testified only about the steps he took using the Cellebrite program; he did not opine as to the reliability or any other aspect of the Cellebrite technology and his testimony was not based on technical or specialized knowledge."); *United States v. William,* 83 F.4th 994, 995 (5th Cir. 2023) (noting that "[w]hen law enforcement uses Cellebrite to pull information from a phone and a lay juror would require no additional interpretation to understand that information, the party does not need to introduce the evidence through an expert" and further noting every circuit that has addressed this issue, including the Ninth Circuit in *Ovies*, reached the same conclusion). *Jimenez-Chaidez* supports allowing the government to offer electronic data extraction through a lay witness, but as the government points out, the decision does not foreclose the government from offering the information through expert testimony, particularly where the witness may use technical terms unfamiliar to the average juror. *See id.* at 1269 ("Our decision today does not foreclose that there may be cases involving Cellebrite or other similar technology that do require expert testimony, particularly where the functionality or reliability of the technology is challenged or otherwise at issue.").[9] Accordingly, the Court denies Defendant's motion to strike these notices.

### D.    Motion in Limine (ECF No. 323)[10]

The government noticed two experts, Dr. Aruna Singhania and Dr. Laura Knight, as to the autopsies of W.L. and Y.L. (ECF Nos. 209, 222.) Defendant asks the Court to preclude these two experts from testifying or, in the alternative, to hold a *Daubert* hearing.

As to Dr Singhania, there is no dispute the government did not disclose a list of cases in which she testified during the last four years as required under Fed. R. Crim. P.16(a)(1)(G). The government explains that Dr. Singhania did not keep a list and could

---

[9]The Court does not construe Defendant's motion to challenge the reliability of the technology used to extract the data here. (ECF No. 322 at 4 ("Given that the reliability of the extraction software is not at issue, there are no opinions they could provide . . .").)

[10]The government filed a response (ECF No. 372) and Defendant filed a reply (ECF No. 390).

1 not recall cases in which she testified, and chronicles efforts the government made to
2 search for those cases. (ECF No. 372 at 4-6.) Under the circumstances here, where Dr.
3 Singhania performed the autopsies of W.L. and Y.L. when she was with the Orange
4 County Coroner's Office and given the number of autopsies she performed over the
5 years, precluding her from testifying because she cannot recall cases where she testified
6 is too drastic a remedy. The Court will conduct a pretrial hearing via video conference to
7 allow for voir dire of Dr. Singhania as to any expert testimony she provided in the last four
8 years. (ECF Nos. 372 at 6 n. 5 (requesting a hearing in the alternative), 390 (asserting
9 Dr. Singhania should not be permitted to testify absent a hearing).)

10 As to Dr. Knight, Defendant's primary argument is Dr. Knight might improperly rely
11 on Dr. Singhania's work instead of reviewing the evidence and offering her own expert
12 opinion. (ECF No. 390 at 2.) To clarify the bases of Dr. Knight's opinion, the Court grants
13 the alternative request to hold a hearing "to determine the source of Dr. Knight's
14 anticipated testimony."

15 In sum, the Court denies Defendant's motion to preclude Dr. Singhania and Dr.
16 Knight from testifying at trial. But the Court grants the alternate request to hold a pretrial
17 hearing to voir dire both witnesses.

### III. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion for pretrial disclosure (ECF No. 287) is granted in part and denied in part as discussed herein.

It is further ordered that Defendant's motion to strike (ECF No. 321) is granted in part and denied in part as discussed herein.

It is further ordered that Defendant's motion to strike (ECF No. 322) is denied.

It is further ordered that Defendant's motion in limine (ECF No. 323) is granted in part and denied in part as discussed herein.

It is further ordered that Defendant's motion to seal exhibit A to reply (ECF No. 388) is granted.

DATED THIS 25th Day of April 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE