UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>CORY SPURLOCK,<br>　　　　　　　　Defendant. | Case No. 3:23-cr-00022-MMD-CLB-1<br><br>ORDER |

**I.　SUMMARY**

Defendant Cory Spurlock has been in pretrial detention in connection with this case since May 16, 2023, after a grand jury returned the original indictment charging him with murder-for-hire conspiracy relating to the killing of W.L. (count 1) and conspiracy to distribute marijuana (count 2). (ECF Nos. 1, 6.) In October 2024, the Court overruled Defendant's objection to the Magistrate Judge's denial of his motion to reopen detention or for release based on a claim of violation of his due process rights. (ECF No. 174 ("Detention Order").) At the time, trial was scheduled for April 22, 2025. But the government's eleventh-hour reversal of its decision not to seek the death penalty shortly before the April trial date resulted in the trial being further continued and then vacated altogether, pending the government's interlocutory appeal of the Court's decision striking the notice of intent to seek death (ECF No. 419 (("May Order")). (ECF No. 421.)

Defendant has again moved for pretrial release. (ECF No. 431 ("Motion")[1].) For the reasons discussed below, the Court will grant the Motion subject to a stay, and will refer the matter of Defendant's release to the Magistrate Judge to establish appropriate conditions of release pending trial.

---

[1]The Court set an expedited briefing schedule. (ECF No. 421.) The government timely responded (ECF No. 436) and Defendant timely replied (ECF No. 440).

## II. RELEVANT BACKGROUND

The Court incorporates the relevant background and procedural history discussed in prior orders. (*See* ECF Nos. 174, 385, 419.) In its May Order, the Court extensively recounted the course of the proceedings leading to the continuance of the April 22, 2025, trial to June 3, 2025, before striking the government's notice of intent to seek death (ECF No. 365 ("Death Notice")). (ECF No. 419.) At a status conference after the Court issued the May Order, the government announced its intent to file a protective notice of appeal of the Order, which led the Court to vacate the June 3, 2025, trial pending the government's appeal. (ECF No. 421.) The Court has not set a new trial date at this time, given the uncertainty as to the government's decision and the length of the appellate process.

Defendant is charged with eight counts: (1) conspiracy to possess with intent to distribute and to distribute marijuana between November 2019 and June 2020; (2) murder while engaged in narcotics trafficking relating to the killing of J.S.; (3) murder for hire relating to the killing of W.L. between October 2020 and March 2021; (4) tampering with a witness by killing of W.L. on or about November 2020; (5) stalking resulting in death relating to W.L. between October and November 2020; (6) stalking resulting in death relating to the killing of Y.L between October and November 2020; (7) interference with commerce by robbery in November 2020; and (8) causing death through use of a firearm during and in relation to a crime of violence in November 2020. (ECF Nos. 342, 363.) The fifth superseding indictment, returned on April 10, 2025, contains notices of the grand jury's special findings of aggravating factors under 18 U.S.C. §§ 3591 and 3592 to support the Death Notice, but is otherwise identical to the fourth superseding indictment. (ECF No. 363.) As noted, the Court struck the Death Notice. (ECF No. 419.)

Defendant has been continuously detained as part of this case since May 16, 2023.[2] (ECF No. 6.)

---

[2]Defendant was arrested in April 2021 on California state charges related to the deaths of W.L. and Y.L. in Bridgeport, California. In a criminal complaint filed in Mono

### III. DISCUSSION

Defendant moves for release, contending the length of pretrial detention based on repeated government-induced delays violates his due process rights.[3]

"[P]retrial detention can 'become excessively prolonged and therefore punitive,' resulting in a due process violation." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)). In determining whether prolonged pretrial detention violates a defendant's due process rights, the Court evaluates three factors: "(1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act."[4] *Torres*, 995 F.3d at 708. Because the Court previously addressed these factors in the October 2024 Detention Order (*see* ECF No. 174 at 4-9), denying release at that time, the Court begins its analysis with the findings in that order. Taken together, the Court concludes that the recent developments since the government filed the Death Notice compel a different outcome.

In the Detention Order, the Court concluded that the first *Torres* factor—the length of Spurlock's time in pretrial detention in this case—weighed in favor of finding a due process violation. (*Id.* at 5.) The Court considered the total amount of time Spurlock was expected to spend in pretrial detention before the then-scheduled April 22, 2025, trial—

---

County Superior Court, Spurlock was charged, alongside two co-defendants, with two counts of first-degree murder and one count of conspiracy. (ECF No. 93.) The Court previously rejected Defendant's argument that his approximately two years of pretrial detention in that state case should be considered as part of the length of his pretrial detention in this case. (ECF No. 174 at 4.) A grand jury returned the original indictment in this case on May 11, 2023 (ECF No. 1), and the presiding Magistrate Judge ordered Spurlock detained pending trial at his initial appearance on May 16, 2023 (ECF Nos. 6, 12). At the time, Spurlock submitted to the matter of the detention. (ECF No. 134 at 8.)

[3]Because the Court agrees with Defendant's first argument, the Court declines to address Defendant's alternative argument that changed circumstances—the May Order and the government's interlocutory appeal—warrant reopening detention under the Bail Reform Act. (ECF No. 431 at 14-16.)

[4]The court addressed the length of delay and the reason for the delay of trial in at least three orders over the last eight months (ECF Nos. 174, 385, 419), with the May Order concluding that the government's filing of the Death Notice on the verge of a firm trial date "violates Spurlock's Sixth Amendment speedy trial and due process rights." (ECF No. 419 at 51.)

almost 24 months—and noted that while Defendant submitted to detention at his initial appearance, he had objected to every continuance of trial. (*Id.*) Subsequent case developments have significantly lengthened this already-substantial 24-month period of expected pretrial detention. After the government filed the Death Notice, the trial was first continued for six weeks, until June 3, 2025, and then vacated while the government's appeal is being litigated. As a result, Spurlock's pretrial detention has been prolonged by an indefinite amount of time—at minimum, multiple months. The government argues that the Motion is premature because the anticipated length of delay is "presently unknown" and "the decision as to any appeal can only be made once the government's adverse review process is complete." (ECF No. 436 at 4-5). But further delays following resolution of the appeal will be inevitable, given the need to redirect resources and reschedule a trial estimated to take four weeks, even proceeding on a non-capital track. While the exact length of the delay remains unknown, that the length crosses the line from substantial to unacceptable is clear. In short, recent developments only further strengthen the findings in the Detention Order as to the first *Torres* factor. The length of pretrial detention now strongly favors a finding of a due process violation.

These same developments compel a different finding than the Detention Order as to the second *Torres* factor—the prosecution's contribution to the delay.[5] In the Detention Order, the Court declined to attribute the two-year pretrial delay solely or primarily to the government, concluding that "other than a delay for several months—comparatively insignificant relative to the total length of pretrial detention—the overall delay here stems primarily from the nature of serious charges involving three killings in two states and the

---

[5]The second *Torres* factor requires the Court to "consider 'the extent to which the prosecution bears responsibility for the delay that has ensued.'" *Torres*, 995 F.3d at 708 (quoting *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) (holding that the record supported the district court's finding that the government was not responsible for a delay because it did not deny access to 600 hours of tape, which necessitated continuance of trial, when it restricted access during a short period of time)).

scope of the investigation involving multiple agencies across multiple states."[6] (ECF No. 174 at 7.) In a subsequent order addressing dismissal for post-indictment delay, the Court again declined to find the government responsible for delay, though the Court noted its agreement with Defendant that the government bore at least some responsibility for the chaotic disclosure of significant discovery so close to trial.[7] (ECF No. 385 at 11-14.) At the current juncture, however, the Court considers that the government bears sole responsibility for the timing of the Death Notice, and the resulting delay of many more months before any trial can begin.

The government argues that "it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." (ECF No. 436 at 6 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).) But as Defendant notes, *Loud Hawk* addressed whether a delay justified *dismissal* on speedy trial grounds; the issue now before the Court is the limited one of Spurlock's liberty interests pending trial. Moreover, the government's focus on its right to seek an interlocutory appeal misses the mark. Again, the second *Torres* factor focuses on whether the government bears responsibility for delay. And here, the government bears sole responsibility for the underlying source of the new delay because of its eleventh-hour reversal of its no-seek decision. (ECF Nos. 365, 419.) Accordingly, the second *Torres* factor now strongly favors a finding that continued pretrial detention violates Spurlock's due process rights.

The recent developments do not change the Court's finding as to the third *Torres* factor—the evidence supporting detention under the Bail Reform Act. In the Detention

---

[6]The Court found that the government bore clear responsibility for the delay in filing a stipulated protective order for a one-month period, but that its refusal to submit an expedited no-seek decision and its decision to pursue multiple indictments did not result in direct delay. (ECF No. 174 at 6-7.)

[7]The Court issued its order denying the motion for dismissal for post-indictment delay on April 18, 2025, and did not consider delays related to the Death Notice. (*Id.*) The Court noted that it "agree[d] with Defendant that the chaotic disclosure of significant discovery close to trial [was] concerning," and emphasized that it "d[id] not give undue deference to the government's assurances that it has simply been trying its best to provide discovery," but concluded that the government's handling of the discovery process was not the reason for the continuances of trial dates up to April 22, 2025. (*Id.* at 13-14.)

Order, the Court found that this factor weighed towards detention, even after Defendant shared favorable information regarding his history and characteristics—including information about his military background, his lack of criminal and substance abuse history, and the support of his family.[8] (ECF No. 174 at 7-9.) The Court agreed with the government as to the difficulty of fashioning conditions of release to reasonably assure Spurlock's appearance and to protect the safety of the community. Since the Court issued the Detention Order, the charges brought against Spurlock have remained substantively the same. But the fact that potential penalties may now include death if the government prevails on appeal increases the risk that Defendant will flee, and thus the risk that conditions of release will be insufficient. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

Although the Court finds that the third *Torres* factor continues to weigh towards detention, this final factor is outweighed by the first two factors, which strongly favor Spurlock. In *Torres,* the Ninth Circuit observed that pretrial detention for a period of 21 months "is approaching the limits of what due process can tolerate." 995 F.3d at 709. Defendant's pretrial detention has now exceeded that metric by many months, and the continued delay resulting from litigation of the government's appeal will no doubt add many more months to Defendant's pretrial detention. Balancing the *Torres* factors, the Court can only conclude that Defendant's continued pretrial detention under the circumstances violates his due process rights. The Court must accordingly grant Defendant's Motion and release Spurlock from pretrial custody, under supervision and with all appropriate conditions.

However, the Court agrees with the government that the decision to release Defendant should be stayed to allow for the government to pursue appellate review. (ECF

---

[8]Under 118 U.S.C. § 3142(g), the presiding judge must consider the following factors in determining whether conditions of release will reasonably assure the appearance of the person and the safety of the community: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released.

No. 436 at 9.) Accordingly, the Court will stay this order for 14 days to allow the government to pursue an appeal and to seek a further stay from the court of appeals. In the meantime, the Court refers the matter of Defendant's release to the Magistrate Judge to determine appropriate conditions of pretrial release under the Bail Reform Act.[9]

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion for release (ECF No. 431) is granted.

It is further ordered that this order is stayed for 14 days to allow the government to pursue an appeal and to seek a further stay from the Court of Appeals.

It is further ordered that the matter of Defendant's release is referred to the Magistrate Judge to determine appropriate conditions of pretrial release under the Bail Reform Act.

DATED THIS 6th Day of June 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[9] Although the Court has found, in its analysis of the third *Torres* factor, that conditions of release may be inadequate to remove the risk of nonappearance and assure community safety, the Court must nevertheless fashion conditions that most reasonably assure Spurlock's appearance and protect the community.